[No. 4056.    Decided November 27, 1901.]

S. A. CALLVERT, *as Commissioner of Public Lands, et al.,* *Appellants,* v. RICHARD WINSOR *et al., as Board of Regents of the University of Washington, Respondents.*

UNIVERSITY LANDS — AUTHORITY TO SELL — IN WHAT BOARD VESTED — CONSTRUCTION OF STATUTE.

The authority vested in the board of regents of the state university by the act of March 14, 1893 (Laws 1893, p. 293) to sell the state university site in the city of Seattle, which had been originally donated for university purposes, and apply the proceeds of sale towards the purchase and construction of a new site and building, was not abrogated so as to vest the power of sale in the state land commissioners by the passage of the act of March 15, 1893, which provide (Laws 1893, p. 387, § 5) that the said board of state land commissioners should have full supervision and control of all public lands granted to the state for common school, university and all other educational purposes, and should possess and exercise over such lands all the authority, power and functions and should perform all the duties which the state land commission, the state school land commission and the state board of equalization and appeal for the appraisement of tide and shore lands had and exercised, since the latter act expressly restricted its operation by making it apply to public lands only "so far as the same shall not have been disposed of and not appropriated by law to any specific public use."

SAME — REPEAL BY IMPLICATION.

The power conferred by the act of March 14, 1893, on the regents of the state university to sell a certain ten acre tract of land cannot be construed as repealed by the acts of 1895 and 1897 vesting control of state lands in the board of land commissioners, since the repealing clauses of those statutes (Laws 1895, p. 570, § 106; Laws 1897, p. 262, § 70) which expressly repeal various prior acts conferring on certain boards control over the state lands, omit any reference to the university act of 1893, and a repeal should not be implied, inasmuch as there is not an irreconcilable repugnancy between them, nor an evident intent to comprise in the later enactments a sole and complete system of legislation on the subject, exclusive of boards not therein expressly mentioned.

STATUTES — TITLE OF ACT.

The title of an act declaring that its object is to provide "for the location, construction and maintenance of the university of Washington" is broad enough to embrace an authorization of sale of a tract of land and the devotion of its proceeds for the purpose expressed in the title.

Appeal from Superior Court, King County.—Hon. G. MEADE EMORY, Judge. Affirmed.

W. B. Stratton, Attorney General, E. W. Ross, C. C. Dalton and R. A. Ballinger, for appellants.

Clise & King, John P. Hoyt and Richard Winsor, for respondents.

The opinion of the court was delivered by

WHITE, J.—This suit was brought by appellants against respondents to restrain and enjoin them from selling, or offering for sale, or attempting to sell, a certain ten-acre tract of land in the city of Seattle, known as the "old university site." The respondents appeared and demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action or to entitle the plaintiffs to the relief demanded. The court sustained the demurrer, to which ruling plaintiffs excepted. Plaintiffs

24—26 WASH.

refused to further plead, and elected to stand on the complaint, and the cause was thereupon dismissed. To the judgment of dismissal the plaintiffs excepted, and appeal from the same.

The issue presented upon this appeal is the question as to whether the authority to dispose of or lease the said ten-acre tract is conferred by law upon the board of state land commissioners or upon the board of regents of the university of Washington. The power of disposition of this land is claimed on the part of the appellants by virtue of an act approved March 16, 1897 (Session Laws 1897, p. 229), and the acts theretofore passed which were superseded by said act of 1897, to-wit, the act approved March 15, 1893 (Session Laws 1893, p. 386), and the act approved March 26, 1895 (Session Laws 1895, p. 527). These acts will be referred to hereafter as "land commissioners' acts." Respondents claim the right to dispose of the said land under §§ 7 and 8 of an act approved March 14, 1893 (Session Laws 1893, p. 297). This act will be referred to hereafter as the "university act." On January 11, 1861, the territorial legislature passed an act constituting Daniel Bagley, John Webster, and Edmund Carr a board of commissioners "to select, locate and receive title for ten acres of land within the vicinity of Seattle, that may be donated to the territory of Washington for a site for the territorial university, and to select and locate the lands donated by congress to the territory of Washington for university purposes." By this act the board was authorized and directed "to proceed forthwith to make selection of such ten-acre lot of land within the vicinity of Seattle as may be donated to the territory for university purposes and to receive a title therefor, and the same to have recorded in the public records of King county," etc. Session Laws 1860-61, p. 16. On January 24, 1862, the territorial legislature passed

an act creating a board of nine regents, who, with their associates and successors in office, were constituted a board of regents, a body corporate and politic, "with perpetual succession, under the name of the University of the Territory of Washington, by which they may sue and be sued, plead and be impleaded, in all the courts of law and equity," and by the act the government of the university was vested in said board of regents. Session Laws 1862-63, p. 477. By an act approved January 31, 1867 (Session Laws 1866-67, p. 114), the territorial legislature changed said board of regents to five, and provided for the reappointment of the board by the legislature every two years. This act repealed all former acts, but provided that the power and authority theretofore vested in the board of commissioners should vest in the board of regents. On April 16, 1861, Arthur Denny and Mary, his wife, conveyed to the territory of Washington 8.32-14.25 acres of said ten acres, and on the same day Charles C. Terry and Mary J. Terry, his wife, and Edward Lander, conveyed to the said territory 1.67-11.25 acres, the two tracts making the ten-acre tract in controversy. It was provided in the deeds from the Dennys, Terrys, and Lander that, if the territorial university should not be located and built upon the ten-acre lot, then the land should revert to and immediately vest in the town of Seattle for the benefit of and as a site for a university, high school, or college. The consideration, as expressed in said deeds, was that said university should be permanently located and built at Seattle on the said ten acres. The territorial university was built upon this tract, and remained there until removed as hereinafter stated. In 1891 the legislature (Session Laws 1891, p. 229), under the title "An act providing for the establishment, location, maintenance and support of the university of Washington," enacted a law providing for

the creation of "a board of university land and building commissioners." This act provided that this board should locate the university of Washington on a tract of land, not exceeding 160 acres, within a radius of six miles from the present site of the university in the city of Seattle, in section 16, township 25 north, of range 4 east, in the city of Seattle. This selected tract was a school section belonging to the state. The act provided for the construction by this board of a university building, etc., and that the buildings on the ten-acre tract, and so much of the ground as was absolutely necessary, should continue to be used for university purposes, under the direction of the board of regents, until on or before the first of March, 1893, when the university and all its movables should be moved to the new university building. It was also provided that the state treasurer should keep a separate and permanent fund, into which should be paid all moneys received from the sale of university lands, and all appropriations made by the state for the maintenance of the university, and all other moneys paid or received for the use of said university from other sources, and payments out of said university fund should be made only in warrants issued by the state auditor upon accounts certified by said board of university land and building commissioners, or as otherwise provided by law. The act provided that the board of university land and building commissioners might sell at public or private sale as a whole, or might subdivide into lots and sell, the said ten acre tract. The act further provided that the new site should not be selected and the said ten acres should not be sold until the original donors of said ten acre tract, their successors or assigns, and the corporate authorities of the city of Seattle, should have executed and delivered to the board of "university land and building commissioners" deeds forever quit-claiming and re-

leasing to the state of Washington the said ten acre tract. The act further provided that as soon as the new site was selected and secured, and the title approved by the attorney general, the board of university land and building commissioners should proceed with the construction on said new site of a university building of such dimensions as might be necessary to meet the wants of the state, and such other buildings as might be necessary for the use of the officers, professors, students, etc. The main university building was to be built of brick or stone. The accounts certified to the auditor by the board, for materials and labor performed under the building contracts entered into as contemplated by the act, were to be audited by the auditor and warrants drawn on the state treasurer; and it was made the duty of the treasurer to pay such warrants out of the money in the university fund not otherwise appropriated. There was no direct appropriation of a specific sum to pay for the work at the session of the legislature of 1891. The quitclaim deeds from the original donors, their successors and assigns, and the city of Seattle, required by this act, were made and filed for record in the auditor's office of King county, Washington, on the 21st day of April, 1891. The deeds from Lander and Arthur A. Denny and wife contained the following conditions:

"This grant is upon the following conditions to be kept and performed by the said state of Washington, party of the second part, to-wit: The said state of Washington, party of the second part, shall cause to be duly passed by the state legislature and approved by its governor proper enactments authorizing the said state by its proper officers or agents for the purpose of carrying out the conditions of this grant, to contract for or procure by purchase or otherwise the fee to sufficient lands within a distance of six miles of the present so-called university site

in said city of Seattle. Said land to be forever used exclusively for state university purposes, and shall be in a compact body of not less than one hundred acres in extent; that said enactment shall further authorize the state of Washington, through its proper officers or agents, to contract for the sale of the lands comprising the present so-called university site in the said city of Seattle, of which the aforesaid described lands are a part and parcel, at such time as the said state of Washington, party of the second part, shall have procured by its proper officer or agents by lawful contracts, other lands as aforesaid for state university purposes; that said enactments shall authorize the sale of the land hereinbefore described in such parcels and for such prices as may be most advantageous to the interest of the said state university, and the contracts for the sale of said lands shall be upon such terms and conditions as may be prescribed in said enactment; provided, however, that no deed or instrument conveying the legal title to any of the said premises shall be made by the said state of Washington or its proper officers or agents until such time as said state of Washington shall have procured the fee to other lands for the purposes of a state university as hereinbefore provided, and shall have erected thereon such buildings as may be necessary and suitable for the purposes of such state university, and shall have established by legal enactment the location of said state university on said lands; provided further, that all the proceeds of the sale or sales of the lands constituting the present so-called university site in said city of Seattle shall be used, first, for the purchase of other lands for state university purposes as hereinbefore provided; second, for the erection of necessary and suitable buildings thereon for state university purposes and the improvement of said land; third, the balance to be invested in such manner as the state legislature may prescribe, the interest arising therefrom to be used in the support and maintenance of the state university. Provided, however, that the principal may be used in the erection of additional university buildings on said lands; that said enactments shall also provide that sufficient of the present so-called university

site in said city of Seattle shall continue to be used for state university purposes until such time as other suitable buildings are erected upon the lands to be procured under the terms and conditions of this grant and said legislative enactments. This deed shall become operative according to its terms and conditions at such time as the said party of the second part shall cause enactments to be passed and approved as aforesaid authorizing the fulfillment of the terms and conditions of this instrument."

The deed from the heirs of Charles C. Terry and wife contained the following:

"This grant is upon the following conditions to be kept and performed by the said state of Washington, party of the second part, to-wit: The said state of Washington, party of the second part, shall by its proper agents proceed to locate the university of Washington on a tract of land not exceeding one hundred and sixty acres within a radius of six miles of the present site of the university of Washington in the city of Seattle, and shall forever reserve the same from disposal or sale and dedicate the same exclusively to educational purposes, and erect and maintain thereon a university building of such dimensions as shall be suited to the wants of the state and such other buildings as may be necessary in connection therewith, and shall proceed to sell the tract of land now known and occupied as the site of the university of Washington, and apply the proceeds arising from the sale thereof to the construction and maintenance of said new university and buildings."

The deed from the city of Seattle is an ordinary quitclaim deed made by the mayor and city clerk of the city of Seattle under an ordinance entitled "An ordinance to authorize the mayor and city clerk of the city of Seattle to make a deed to the state of Washington, on the fulfillment of certain conditions, of what is known as the university site and property in said city." On the 14th of March, 1893 (Session Laws of 1893, p. 293), a law was

enacted under the following title: "An act providing for the location, construction and maintenance of the university of Washington, and making an appropriation therefor, and declaring an emergency." This act authorized and directed the governor of the state to buy fractional section 16 in township 25 north, of range 4 east, Willamette Meridian, from the proper officer of the state, etc. The board of regents of the university of Washington were authorized and empowered by this act to select from their number an executive committee of three members, to erect, on the land bought by the governor, university buildings, etc. The act also provided that, after the purchase of the lands by the governor had been made, the board of regents, by decision of six-eighths of their number, duly ascertained by an aye and nay vote, should proceed "to sell the ten acres in the city of Seattle known as the university grounds, which have been deeded to the state by A. A. Denny and others, which deeds are hereby accepted and made part of this act." The sale of such land was to be made by public auction, etc. It is further provided in said act that all of the ten acres in the city of Seattle known as the university grounds "shall remain in the charge and under the direction of the board of regents until the new buildings are ready for occupancy, when the university and all of its movable belongings shall be moved to them." The board of regents were authorized, from time to time, as parts of the ten acre tract were sold, to authorize the purchaser to take possession of the lot or lots purchased; and the board of regents were also authorized to lease all unsold portions under such restrictions as they might provide. It is further provided in said act that the board of regents should ascertain how much land granted to the state for university purposes by § 14 of the enabling act approved February 22, 1889, for

state, charitable, educational, penal, and reformatory institutions was assigned for the support of the university. The act further provided that the state treasurer should keep a separate and permanent fund to be known as the "university fund," into which should be paid all university money received from all sources, and that said fund should be paid out by the treasurer only upon warrants drawn by the state auditor, based on the properly certified accounts of the board of regents of the university. The act further provided for the investment of any portion of unappropriated moneys in the university fund at the request of the board of regents, etc. This act superseded the university act of 1891. Under an act making appropriations for sundry civil expenses of the state government for the fiscal term beginning April 1, 1893, and ending March 31, 1895, and for other purposes approved March 17, 1893 (Session Laws 1893, p. 451), $150,000 was appropriated "for paying the expense of selling the present site of the state university, for preparing the grounds at the new site, and for the erection of the new building of the state university; provided, that the money hereby appropriated for this purpose shall be returned into the state treasury by the board of university regents from the proceeds of the first sales of the old site of the university consisting of ten acres in the city of Seattle." On the 15th of March, 1893, the commissioners' act of that year was enacted (Laws 1893, p. 386). Section 5 of this act provides:

"That the said board of state land commissioners shall have full supervision and control, under the law, of all public lands granted to the state of Washington for common school, university and all other educational purposes; also including lands granted for charitable, reformatory and penal institutions, public buildings; and

also all tide lands and harbor line areas, and all other public lands that are now or shall hereafter be owned by the state of Washington, so far as the same shall not have been disposed of, and not appropriated by law to any specific public use; and that the said board shall, from the date of its assumption of official duties, possess and exercise over all *such* lands and areas all the authority, power and functions, and shall perform all the duties which the state land commission, the state school land commission and the state board of.equalization and appeal for the appraisement of. tide and shore lands, respectively, had and exercised, and which by law heretofore devolved upon and were the functions which they performed; and the said board of state land commissioners is hereby constituted their successor, and all the provisions of law heretofore applicable to the said state land commission, state·school land commission and the state board of equalization and appeal shall, so far as consistent with this act, be deemed, and is hereby made applicable to the said board of state land commissioners hereby created," etc.

Section 7 of the act provides:

"That in dealing with the various descriptions of land the supervision, control, management or disposition whereof is committed to the said board of state land commissioners, by the provisions of this act, said lands shall be dealt with according to the following classification: (1) Common school lands and lieu and indemnity lands therefor; (2) university lands and lieu and indemnity lands therefor; (3) overflowed lands and shore and tide lands; (4) harbor line areas or rims; (5) all other lands belonging to the state," etc.

On March 13, 1895, the land commissioners' act of that year passed the house and senate, and was approved on March 26, 1895 (Laws 1895, p. 527). Section 1 of this act is as follows:

"That for the purpose of this act all lands belonging to and under the control of the state shall be divided into the following classes:

1.  Granted lands:  (a) Common school lands and lieu and indemnity lands therefor.  (b) University lands and lieu and indemnity lands therefor.  (c) Other educational land grants.  (d) Lands granted to the state of Washington for other than educational purposes, and lieu and indemnity lands therefor.  (e) All other lands, including lands acquired or to be hereafter acquired by grant, deed of sale, or gift, or operation of law.

2.  Tide lands:  All lands over which the tide ebbs and flows from the line of ordinary high tide to the line of mean low tide except in front of cities where harbor lines have been established, or may hereafter be established, where such tide lands shall be those lying between the line of ordinary high tide and the inner harbor line, and excepting oyster lands.

3.  Shore lands:  Lands bordering on the shores of navigable lakes and rivers below the line of ordinary high water and not subject to tidal flow.

4.  Oyster lands:  All natural oyster beds, and lands suitable for the cultivation of oysters.

5.  Harbor lines and areas:  Such lines and areas as are described in article XV of the constitution of the state of Washington and which have been established according to law.  All of which outer harbor lines so established as aforesaid are hereby ratified and confirmed, also all such harbor lines and areas as may and shall be hereafter established.

6.  Arid lands:  Except lands granted to the state under the act of congress approved August 18, 1894."

Section 5 of the act provides that said board should have full supervision and control under the law of all public lands granted to the state of Washington, as defined in § 1 of the act, and should have authority "to provide for the selection, survey, management, lease and disposition of the state's lands as herein provided," etc. Section 106 of this act is as follows:

"An act entitled 'An act for appraising and disposing of the tide and shore lands belonging to the state of

Washington,' approved March 26, 1890, an act entitled 'An act to provide for the selection of lands granted to the state of Washington under act of congress approved February 22, 1889, for the purpose of the erection of public buildings and a penitentiary, the use and support of agricultural and scientific normal schools and charitable, penal and reformatory institutions, also providing for selection of lands granted to the state of Washington under sections 1947, 2275 and 2276 of the Revised Statutes of the United States,' approved March 10, 1891, and an act entitled 'An act to provide for the creation of a state board of land commissioners, for the management and disposition of the public lands of the state, making an appropriation therefor, and declaring an emergency,' approved March 15, 1893, are hereby repealed, except as provided in this act; saving, however, and preserving all rights which have been acquired and all powers and privileges which have been conferred upon any person or educational institution by any act of the legislature."

By an act re-appropriating to the university $39,000, which was about to lapse, which passed the senate March 11th, and the house March 13th, and was approved March 21, 1895 (Session Laws 1895, p. 469), it was provided that said sum, or so much thereof as might be necessary to complete the original appropriation of 1893 of $150,000, remaining unexpended March 31, 1895, was appropriated to complete the contract entered into by the board of regents of the university of Washington; and it was expressly provided in this act that the money thereby appropriated should be subject to the same provisions as the original appropriation, viz., "that the money hereby appropriated shall be returned into the state treasury by the board of regents of the university of Washington from the proceeds of the first sales of the old site of the university, consisting of ten acres in the city of Seattle." On March 16, 1897, the land commissioners' act of that

year was approved (Laws 1897, p. 229). Section 4 of this act is identical with § 1 of the act creating a board of state land commissioners, approved March 26, 1895, with the exception that the words "including arid lands" follow the words "operation of law" in subdivision 1 of § 4; and the provision relative to oyster lands is omitted, and the sixth paragraph is omitted. The first paragraph of § 5 of the said act is the same as § 2 of the land commissioners' act of 1895. Section 70 of said act of 1897 reads as follows:

"An act entitled 'An act for appraising and disposing of the tide and shore lands belonging to the state of Washington,' approved March 26, 1890; an act entitled 'An act to provide for the selection of lands granted to the state of Washington, under an act of congress approved February, 22, 1889, for the purpose of the erection of public buildings and the penitentiary, the use and support of agricultural, scientific and normal schools and state charitable, penal and reformatory institutions, also providing for the selection of lands granted to the state of Washington under sections 1947, 2275 and 2276 of the Revised Statutes of the United States,' approved March 10, 1891; an act entitled 'An act to provide for the selection, survey, management, lease and disposition of the state's granted, tide, oyster and other lands, harbor areas, and for the confirmation and completion of the several grants to the state by the United States, creating a board of state land commissioners, defining their duties, and authorizing them to act as the commission provided for in article XV of the state constitution, and declaring an emergency,' approved March 26, 1895; an act entitled 'An act accepting the terms of the act of congress, approved August 18, 1894, providing for the reclamation, settlement and disposition of the one million acres of arid land granted therein, making appropriation therefor, and declaring an emergency,' (excepting section one of said last mentioned act), approved March 22, 1895, are hereby expressly repealed; an act entitled 'An

act relating to the improvement of harbors and water-
ways in the state of Washington, and providing funds
therefor,' approved March 10, 1891, is hereby repealed."

The appellants contend that it was the intention of the
legislature, by the land commissioners' acts of 1893, 1895,
and 1897, to revise the entire matter relative to the sale
of all lands the title of which was in the state, and that
by this legislation the university act of 1893, so far as it
authorized the sale of said ten acre tract by the board
of regents of the university, was repealed. The object
of all interpretation and construction of statutes is to
ascertain the meaning and intention of the legislature,
and, when that is determined, it must control. It is plain
that it was the intention of the legislature by the univer-
sity act of 1891 to set aside the ten acre tract for sale by
the board constituted by that act, and from the proceeds
of such sale to erect on the new site university buildings,
etc. This act contained the provision that the state treas-
urer should keep a separate and permanent fund to be
known as the "university fund," into which direct appro-
priations and all moneys paid or received from other
sources for the use of said university should be paid; and
the further provision that the money in said university
fund not otherwise appropriated should be applied on the
building contracts for university buildings authorized
by the act. This act was superseded by the university act
of March 14, 1893, but the continued intention to set
aside the proceeds of the ten acre tract for new university
buildings on the new site is fully manifest by that act
and other legislation at the same session. The authority
to sell the ten acre tract is conferred upon the board of
regents by this act, and the sale is to be by public auction
after the new site has been purchased by the governor,
the manner in which such sales should be made being

fully provided for. It is recited in § 7 of the act that the ten acres have been deeded by Denny and others. The deeds referred to here are the quitclaim deeds required by the university act of 1891. It is further declared that said deeds are hereby accepted and made part of this act. From this it is fair and proper to infer that it was the intention of the legislature, by the university act of 1893, to comply with the conditions set forth in these deeds, and that the conditions provided in the deeds were accepted by the legislature. It was conditioned in these deeds that the proceeds of the sale of said ten acre tract should be used in building a new university on the new site and in maintaining a university there. The university fund to be kept by the treasurer, into which was to be paid university money received from all sources, was continued by this act, and warrants on the same were to be drawn by the state auditor based on properly certified accounts of the board of regents. Provision was also made for investment of the surplus university funds when recommended by the board of regents, etc. The general appropriation act of that session appropriated $150,000 for the new university buildings, but it was expressly provided that the same should be returned to the state treasurer by the board of university regents from the proceeds of the first sales of the ten acre site. It would seem from this legislation that the ten acre tract was appropriated by law to a specific public use. If so, the land commissioners' act of March 15, 1893, was not intended to repeal §§ 7 and 8 of the university act, for in § 5 of the act creating the board of land commissioners it is expressly provided that its provisions should not apply to public lands appropriated by law to any specific public use. Further, after describing in § 5 the lands over which the land commissioners created by the act should have

supervision and control, the act says the board of commissioners "shall, from the date of its assumption of official duties, possess and exercise over all *such* lands and areas all the authority, power and functions, and shall perform all the duties which the state land commission, the state school land commission, and the state board of equalization and appeal for the appraisement of tide and shore lands, respectively, had and exercised, and which by law heretofore devolved upon and were the functions which they performed." The act goes on to make the new board of state land commissioners the successor of the three boards mentioned. The lands over which the board of university regents exercised control is nowhere mentioned, and we think it clear that § 5 of the commissioners' act of 1893 gave to the board of state land commissioners control only over the lands theretofore under the control of the three boards mentioned in the act, and, as the ten acre tract had never been under the control of any one of such boards, it was not included in the provisions of the act. The term "granted lands," used in the commissioners' acts of 1893, 1895, and 1897, undoubtedly refers to lands granted by the United States for public institutions, common schools, etc., and not to private grants by individuals. The term "All other public lands that are now or shall hereafter be owned by the state of Washington" is broad enough, however, to include private grants. This term is omitted from the commissioners' acts of 1895 and 1897, and the following term substituted therefor in these acts: "All other lands including lands acquired or to be hereafter acquired by grant, deed of sale or gift or operation of law." This term in no way enlarges or restricts the term "all other public lands that are now or shall hereafter be owned by the state of Washington," as used in the commissioners'

act of 1893, but, in effect, means the same thing. The mere alteration in phraseology in this respect by the land commissioners' act of 1895 does not alter the construction of the land commissioners' act of 1893. *Conger v. Barker,* 11 Ohio St. 2. Section 1 of the commissioners' act of 1895 is therefore but a substitute for and a re-enactment of the commissioners' act of 1893, so far as lands mentioned in § 5 of that act are concerned, and is not a new enactment. *Mudgett v. Liebes,* 14 Wash. 482 (45 Pac. 19).

Section 106 specifically enumerates the acts repealed, and no mention is made of the university act of 1893; and it is expressly provided in this section that all powers that have been conferred upon any person or educational institution by any act of the legislature shall be saved and preserved. This is broad enough to include the power conferred on the board of regents of the university by the university act of 1893 relative to the sale and disposition of the ten acre tract.

There is one other strong reason sustaining this view. Two days before the commissioners' act of 1895 was passed by the house, and on the very day it was passed by the senate, a bill was passed re-appropriating $39,000 for the construction of the university, in which it was expressly provided that the board of regents of the university should pay back the appropriation to the state from the proceeds of the first sales of the ten acre tract. How could the board of regents return such proceeds to the state treasurer unless such board had control of such sales? Hence we conclude that it was not intended by the legislature, by the land commissioners' act of 1895, to repeal §§ 7 and 8 of the university act of 1893. Section 4 of the commissioners' act of 1897 is literally a re-enactment of the commissioners' act of 1895, save

that oyster lands are omitted and all arid lands are included. There was no new enactment in this section affecting said ten acre tract, and if it was excluded from the operation of the commissioners' act of 1895, as we have held, it must also be excluded from this act, for those portions of § 1 of the commissioners' act of 1895 which are retained in § 4 of the commissioners' act of 1897 must be considered as remaining in force from the time of the original enactment, and not as a new enactment. *Mudgett v. Liebes, supra;* Black, Interpretation of Laws, p. 359.

It will be noted that § 70 of the commissioners' act of 1897, repealing the various acts, and conferring on certain boards control over the public lands, omits any reference to the university act of 1893. Why should we, therefore, read into § 70 a repeal of §§ 7 and 8 of the university act of 1893? Repeals by implication are not favored, and a statute will not be construed as repealing a prior act on the same subject in the absence of express words to that effect, unless there is an irreconcilable repugnancy between them, or unless the new law is evidently intended to supersede all prior acts on the matter in hand, and to comprise in itself a sole and complete system of legislation on that subject.

"Every new statute should be construed in connection with those already existing in relation to the subject-matter, and all should be made to harmonize and stand together, if that can be done by any fair and reasonable interpretation, and if the new act does not expressly declare the repeal of an earlier statute, it will not be construed as effecting such repeal unless there is such a repugnancy or conflict between the provisions of the two acts as to show that they could not have been designed to remain equally in force." Black, Interpretation of Laws, 112.

"But repeal by implication is not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute-book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is, a rule founded in reason as well as in abundant authority, that, in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal, construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject." . . Endlich, Interpretation of Statutes, § 210.

The sale of the ten acre tract was for a special purpose and the statute authorizing such sale is in the nature of a special statute.

"The repeal of a special statute passed for a special purpose must either be expressed or the manifestation of the legislative intent to repeal must be so clear as to be equivalent to an express direction." Sedgwick, Statutory Construction, 99, note; *Commonwealth v. Richmond & P. R. R. Co.,* 81 Va. 355.

"But repeals by implication are not favored; and the repugnancy between two statutes should be very clear to warrant a court in holding that the later in time repeals the other, when it does not in terms purport to do so. This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation except upon the most unequivocal

manifestation of intent to that effect." Cooley, Constitutional Limitations (6th ed.), p. 182.

"It is a rule of construction that a special statute providing for a particular case or applicable to a particular locality is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would be taken strictly, and but for the special law include the case or cases provided for by it." *Van Denburgh v. Greenbush,* 66 N. Y. 1, 3; *State v. Binnard,* 21 Wash. 349 (58 Pac. 210).

"The general statute is read as silently excluding from its operation the cases which have been provided for by the special one." Endlich, Interpretation of Statutes, § 223.

But it is urged by the appellants that the power of the board of regents to sell the ten acre tract is not embraced in the title of the university act of 1893, as required by the constitution, providing that no bill shall embrace more than one subject, and that shall be expressed in the title. The subject, as expressed in the title, was to provide "for the location, construction and maintenance of the university of Washington." The ten acre tract of land was to be sold, and the proceeds used for the very purpose expressed in the title of the act. This court has said:

"It is permissible to insert those matters which, though they may not be specifically expressed in the title, are proper to the full accomplishment of the object which is expressed, or are naturally suggested by, or connected with, that object." *Johnston v. Wood,* 19 Wash. 441, 444 (53 Pac. 707).

"A title may be as broad as the legislature sees fit to make it, and thereunder any specific legislation, as to any subject relating to the general matter thus broadly embraced in the title, sustained." *Percival v. Cowychee, etc., Irrigation District,* 15 Wash. 480, 482 (46 Pac. 1035).

The contention of the appellants in this respect cannot be sustained. The judgment of the court below is therefore affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR, MOUNT and HADLEY, JJ., concur.