[No. 7198–7–III.   Division Three.   November 25, 1986.]

DONNA SARGEANT, ET AL, *Respondents*, v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*

*Kenneth O. Eikenberry, Attorney General, Larry Watters* and *Pamela A. Morse, Assistants,* and *Nancy Krier,*

*Legal Intern,* for appellant.

*Michael E. Schwab* and *Schwab, Kurtz & Hurley,* for respondents.

THOMPSON, J.—The Department of Labor and Industries appeals the trial court award of crime victim's benefits under RCW 7.68.020(5). We reverse.

On August 23, 1975, Reginald Sargeant, Jr., was fatally injured by another's criminal act. On October 1, 1975, his surviving spouse, Donna, filed an application with the Department on behalf of herself and the deceased's three surviving children for crime victim's death benefits pursuant to RCW 7.68. The Department denied the claim on the basis the death was not the result of a criminal act. Following a series of appeals, that order was reversed by the Court of Appeals July 29, 1980.

On January 22, 1981, the Department issued an order allowing the claim but denying payment of benefits on the theory they were offset in full by benefits received by the claimants from collateral sources. Subsequent orders were issued, appeals were filed, and on November 15, 1982, the Board of Industrial Insurance Appeals reversed the Department's offset of social security benefits as to two of the children not in legal custody with either the deceased or Donna Sargeant at the time of death.

The Board affirmed the Department's denial of benefits to Donna and Athena, the child in her custody, finding Reginald Sargeant was not "gainfully employed" within the meaning of RCW 7.68.020(5) at the time of his death, since he was a full-time student at Yakima Valley College, receiving a monthly $388 educational allowance from the Veterans Administration. Donna and Athena appealed and on May 28, 1985, the Superior Court reversed a portion of the Board decision, concluding Mr. Sargeant was gainfully employed under the statutory definition. The Department appeals.

At issue is whether a full-time student receiving a Veter-

ans Administration educational allowance is "gainfully employed" for purposes of crime victim's benefits under RCW 7.68.020(5). We hold he or she is not.

■ Appellate review of an administrative decision is limited to the record before the agency, and the court may reverse the Board's determination only if its findings, conclusions, and decision are (1) affected by error of law; (2) clearly erroneous in view of the entire record and the public policy contained in the authorizing legislation; or (3) arbitrary and capricious. RCW 34.04.130(6)(d), (e), (f); *Hansen v. Department of Labor & Indus.*, 27 Wn. App. 223, 225, 227, 615 P.2d 1302 (1980).

RCW 7.68.020(5) provides:

> "Gainfully employed" means engaging on a regular and continuous basis in a lawful activity from which a person derives a livelihood.

RCW 7.68.070(4) provides in pertinent part:

> The benefits established upon the death of a workman and contained in RCW 51.32.050 as now or hereafter amended shall be the benefits obtainable under this chapter and provisions relating to payment contained in that section shall equally apply under this chapter: . . . *Provided further,* That if the criminal act results in the death of a victim who was not *gainfully employed* at the time of the criminal act, and who was not so employed for at least three consecutive months of the twelve months immediately preceding the criminal act;
>
> . . .
> (b) Where any such spouse has legal custody of one or more but not all of such children, then such burial expenses shall be paid, and such spouse shall receive a lump sum payment of three thousand seven hundred fifty dollars and any such child or children not in the legal custody of such spouse shall receive a lump sum of three thousand seven hundred fifty dollars to be divided equally among such child or children;

(Italics ours.)

Mrs. Sargeant contends the educational benefits are fringe benefits flowing from the veteran's employment relationship. *In re Marriage of Shea,* 111 Cal. App. 3d 713, 169

Cal. Rptr. 490 (1980). Educational benefits included in the Veterans' Educational Assistance Act are provided in order to make service in the Armed Forces more attractive, to extend education benefits to deserving veterans who might not otherwise be able to afford such education, and to restore lost educational opportunities. 38 U.S.C. § 1651. Minimum eligibility requirements include at least 180 active duty days. 38 U.S.C. § 1652(a)(1)(A). Following application, benefits are payable only while the veteran is enrolled and making satisfactory progress in an approved educational institution. 38 U.S.C. §§ 1674, 1683. The educational assistance allowance is granted "to meet, in part, the expenses of the veteran's subsistence, tuition, fees, supplies, books, equipment, and other educational costs". 38 U.S.C. § 1681.

In providing crime victims' compensation, it was the stated intent of the Legislature "to make certain of the benefits and services which are now or hereafter available to injured workmen under Title 51 RCW also available to innocent victims of crime as defined and provided for in this chapter". RCW 7.68.010. Although arguably RCW 7.68 defines "gainfully employed" more expansively than the Industrial Insurance Act defines "worker",[1] nonetheless, given the limited funding allotted the program from the outset, the bill's sponsors acknowledged levels of compensation under this program may not even reach the scope of RCW Title 51.[2]

---

[1] RCW 51.08.180 provides in part:

"(1) 'Worker' means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title, . . ."

[2] "Senator Rasmussen: '. . . In the event that a person was inadvertently unemployed for that period of time, he still might be a long time breadwinner of the family and under the industrial insurance the widow and children would be entitled to a pension. That widow's pension over a period of years would amount to considerably more than the seven thousand. Wouldn't you think that that

■ Concomitantly, given the stated purposes behind the G.I. benefits, it is difficult to conclude Mr. Sargeant's requisite attendance at an approved institution was an activity from which he derived a livelihood so as to be considered "gainfully employed" under RCW 7.68. Moreover, although *Shea* concluded the benefits were "earned by the employee as part of the compensation for his services . . .", *Shea* at 717, that holding related to the general community property rule characterizing a fringe benefit earned by employment before marriage as separate property even if received after marriage. Even if we were to adopt the theory these benefits were compensation, it would be for a past period of gainful employment in the military, not Mr. Sargeant's employment or educational status at the time of death.

Thus, the trial court improperly reversed the Board's determination benefits should be calculated under the provisions for victims not gainfully employed. The Board correctly interpreted statutory language and that determination was not affected by error of law. Moreover, reviewing the public policy behind the statute which makes a distinction between gainfully employed and unemployed victims, it cannot readily be concluded the Board's decision was clearly erroneous or arbitrary and capricious. *See Hansen,* at 226–27.

should have an amendment in there to provide that if he is the breadwinner and for a period of years, that she be entitled to the pension?'

"Senator Durkan: 'This is one of the areas in which you have to begin drawing the lines. It is a new concept on compensation. It is mainly intended to benefit that victim of the crime. Now I recognize that the logical conclusion is that you should also take care of it, if that victim is killed, then it should be also his wife and his children. But we have reached a point in time where the state, in order to be able to fund this, we had to make some arbitrary decisions and this is one of the decisions that we made. . . . There are many things not in this bill that if you were talking about social justice you could very readily put in it but, frankly speaking, it became a question of how many dollars we were going to be able to invest in the initial inception of the bill . . .'" Senate Journal, 43d Legislature (1973), at 895.

The trial court is reversed with instructions to reinstate the Board's order.

McINTURFF, A.C.J., and MUNSON, J., concur.