[No. 52583-8.   En Banc.   July 30, 1987.]

THE BOARD OF REGENTS OF THE UNIVERSITY OF WASHING-
TON, ET AL, *Appellants*, v. THE CITY OF SEATTLE,
ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General, James B. Wilson, Senior Assistant,* and *Gary L. Ikeda, Assistant; Robert H. Lorentzen* and *Williams, Kastner & Gibbs,* for appellants.

*Douglas N. Jewett, City Attorney,* and *Gordon F. Crandall, Assistant,* for respondents.

PEARSON, C.J.—The plaintiffs appeal a summary judgment order which holds that the City of Seattle owns an easement for street purposes over Fourth Avenue. The trial court order requires the plaintiffs to abide by Seattle City Ordinance 111554, tear down the Fourth Avenue skybridge,

and repair any damage caused by its removal. The City cross–appeals from the trial court's refusal to enforce that portion of the ordinance which imposes street use fees assessed for 1981 to 1985 as a condition of stay.

We hold that the plaintiffs are equitably estopped to challenge the 1906 - condemnation judgment which established a City easement for street purposes over Fourth Avenue and, absent a record of the City's proceedings, refuse to review the City ordinance that requires UNICO to remove the skybridge. We also find that the trial court properly preserved this action by refusing to require payment of street use fees as a condition of stay. The trial court's rulings are affirmed.

## I

In 1861 the State of Washington acquired title to the "Metropolitan Tract", 10 acres of land in downtown Seattle. By 1893 the University of Washington through its Board of Regents managed the tract for the benefit of the University. *See Callvert v. Winsor,* 26 Wash. 368, 67 P. 91 (1901) (Board of Regents vested with power to sell the Metropolitan Tract for the University of Washington).

In February 1906 the City served a summons and petition in condemnation on the Board of Regents and the lessees of the Metropolitan Tract. The Attorney General failed to appear for the Board of Regents, and on December 7, 1906 a default judgment of condemnation and no compensation therefor was ordered against the State. Other parties did appear and receive compensation in that action. The City stipulated in oral argument on this appeal that the interest acquired by it in the 1906 action is properly characterized as an "easement for street purposes".

In March 1908 the State filed a complaint seeking to quiet title in the State of Washington to a disputed portion of the Metropolitan Tract encompassing Fourth Avenue, free of any City or other claims. Two stipulations were entered into in that action. The first stipulation provided that the quiet title suit

shall not in any wise affect, vary, modify or change in any manner the proceeding heretofore brought by The City of Seattle to condemn a portion of the land described in plaintiff's complaint herein for the opening, extending, establishing, grading and regrading of Fourth Avenue through the University Ten Acre Tract, in the City of Seattle.

In the second stipulation the parties agreed that the State could have a decree quieting title in itself to the disputed portion of the Metropolitan Tract, not including Fourth Avenue and an alley along the west side of the Tract. In July 1909 the Superior Court quieted title to the Metropolitan Tract in the State, specifically "excepting therefrom the portion thereof condemned for 4th Ave." in the 1906 condemnation proceeding. The Supreme Court affirmed the trial court in *State v. Seattle*, 57 Wash. 602, 107 P. 827 (1910).

In August 1912 the Supreme Court determined that the lessee of the Metropolitan Tract was not benefited by and therefore not liable for special assessments to pay for improvements to Fourth Avenue because it was owned by the City by virtue of the 1906 condemnation proceedings. *Inner–Circle Property Co. v. Seattle*, 69 Wash. 508, 518, 125 P. 970 (1912). In August 1916 the Supreme Court enforced a stipulation in the 1906 condemnation case that required the Metropolitan Tract lessee to pay assessments for Seneca Street but not Fourth Avenue. *Metropolitan Bldg. Co. v. Seattle*, 92 Wash. 660, 666, 159 P. 793 (1916), *aff'd*, 98 Wash. 697 (1917).

In April 1971 the Seattle City Council and Mayor approved ordinance 99871. That ordinance granted the current lessee of the tract, University Properties, Inc. (which later changed its name to UNICO, Inc. and is a plaintiff in this action), permission to construct and maintain a pedestrian skybridge over Fourth Avenue for 10 years.

The parties dispute whether the City or Metropolitan Tract lessees paid costs of the City's various improvements

to Fourth Avenue. UNICO does not deny that it paid sky-bridge permit fees to the City pursuant to ordinance 99871.

In March 1981 UNICO applied to renew its Fourth Avenue skybridge permit. In February 1982 the City Council passed ordinance 119422, which established "the procedure and criteria for the administration and approval of applications for permission to construct, maintain and operate pedestrian skybridges over and across streets, alleys and other public places within the City of Seattle." Under the ordinance the City may require a permittee to remove its skybridge if certain criteria are met.

On February 24, 1984, the City adopted and the Mayor approved ordinance 111554. The ordinance renewed UNI CO's skybridge permit from April 30, 1981, to April 30, 1985, and revised permit fees and other requirements. Ordinance 111554 also required UNICO to remove the Fourth Avenue skybridge at UNICO's own cost and expense and imposed an additional lump sum fee of $10,543 to cover the period of the permit from April 30, 1981, to April 29, 1985. The court has been provided with several letters, memoranda and interrogatories pertaining to the City hearings wherein ordinance 111554 was adopted, but a record of those proceedings is absent from the clerk's papers.

On May 9, 1984, the trial court granted a preliminary injunction restraining the City from enforcing ordinance 111554. On February 19, 1986, the trial judge signed an order of summary judgment for the City, ruling that the City possessed "[a]n easement for street purposes to that portion of Fourth Avenue within the Metropolitan Tract" by virtue of the 1906 judgment, the first 1908 stipulation and the 1909 judgment. The trial court found the City ordinances valid and enforceable, ordered the plaintiffs to remove the skybridge and, upon satisfaction of several conditions, stayed that order pending this appeal. The trial court refused to enforce permit fees from 1981 as a condition of the stay, reserving consideration of that fee provision to proceedings following appeal.

The plaintiffs sought direct review of all portions of the summary judgment order and the City cross-appealed, challenging the trial court's refusal to impose payment of the permit fees as a condition of the stay. We affirm the trial court's orders.

In reviewing a summary judgment order, we engage in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Blenheim v. Dawson & Hall, Ltd.,* 35 Wn. App. 435, 439, 667 P.2d 125, *review denied,* 100 Wn.2d 1025 (1983). We will review only whether as a matter of law the agreed facts in this case support the trial court's summary judgment order. *Fahn v. Cowlitz Cy.,* 93 Wn.2d 368, 373, 610 P.2d 857, 621 P.2d 1293 (1980).

The plaintiffs initially argue that the City's attempt to regulate the use of the Metropolitan Tract is an unconstitutional impairment of state government. The power to manage the Metropolitan Tract is vested in the University of Washington Board of Regents. RCW 28B.20.392; *State v. Seattle,* 94 Wn.2d 162, 165-66, 615 P.2d 461 (1980). As the City correctly points out, however, the Board of Regents' power can only extend to University-owned property, and city streets are regulable by the City. RCW 35.22.280(7), (8). Our resolution of this case reveals that the City possesses an easement for street purposes over Fourth Avenue; hence, the City does not impair state government by regulating its own streets.

## II

The plaintiffs assert that the University of Washington owns Fourth Avenue, and thus they are not subject to Seattle ordinances that require them to tear down the Fourth Avenue skybridge. The City asserts that it possesses an easement over Fourth Avenue and may therefore regulate the Fourth Avenue skybridge by ordinance.

The parties' briefs address several doctrinal approaches to resolve the issue of what rights they possess in Fourth Avenue, including res judicata, collateral estoppel, laches,

implied dedication, and equitable estoppel. Because we conclude the plaintiffs are equitably estopped to challenge the 1906 condemnation judgment, we do not address the remaining doctrines.

██ The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 407, 722 P.2d 787 (1986); *Shafer v. State,* 83 Wn.2d 618, 623, 521 P.2d 736 (1974); *Pioneer Nat'l Title Ins. Co. v. State,* 39 Wn. App. 758, 760–61, 695 P.2d 996 (1985); *Department of Rev. v. Martin Air Conditioning & Fuel Co.,* 35 Wn. App. 678, 682–83, 668 P.2d 1286 (1983); *Conversions & Surveys, Inc. v. Department of Rev.,* 11 Wn. App. 127, 135, 521 P.2d 1203 (1974). When the State acts in its proprietary capacity by disposing of public lands, "it will receive no better treatment than any two private individuals who bring their dispute before the courts for final resolution." *Metropolitan Park Dist. v. State,* 85 Wn.2d 821, 827–28, 539 P.2d 854 (1975); *Strand v. State,* 16 Wn.2d 107, 118, 132 P.2d 1011 (1943). *See McAvoy v. Weber,* 198 Wash. 370, 376–77, 88 P.2d 448 (1939) (instrumentality of the United States that performed commercial business functions was subject to garnishment to the same extent as a private corporation).

We reiterate with approval language from *State v. Horr,* 165 Minn. 1, 7, 205 N.W. 444 (1925):

> We ordinarily look to the action of the state to be characterized by a more scrupulous regard to justice than belongs to the ordinary person. The state is formed for the purpose of securing for its citizens impartial justice, and it must not be heard to repudiate its solemn agreement, relied on by another to his detriment, nor to perpetrate upon its citizens wrongs which it would promptly condemn if practiced by one of them upon another.

quoted in *Strand v. State,* 16 Wn.2d at 118–19; *see also* Comment, *Estoppel and Government,* 14 Gonz. L. Rev. 597, 621 (1979) (appropriate to apply estoppel against government to insure fairness in government's relationship with its citizens).

The Board of Regents manages the Metropolitan Tract for profit to benefit the University of Washington. Plaintiffs do not point to any governmental function that will be impaired by application of estoppel in the case at bench. *See Shafer,* at 622; *Pioneer Nat'l Title,* at 760. Thus, the State's actions in managing Fourth Avenue are proprietary in nature and for purposes of equitable estoppel we hold the State to the same standards as those applied to individuals who manage their property.

The plaintiffs assert that the inconsistent act element is lacking in this dispute. To this end they first claim that the State is not bound to the acts of the Attorney General in the 1906 litigation and stipulations in the 1908 case because those acts were ultra vires to the extent they could estop the State from claiming title to Fourth Avenue.

■ The State does not "act" and will not be held estopped based on the ultra vires acts of its officers. *Department of Rev. v. Martin Air Conditioning & Fuel Co.,* at 683. An act of an officer which is within his realm of power, albeit imprudent or violative of a statutory directive, is not ultra vires. *Haslund v. Seattle,* 86 Wn.2d 607, 622, 547 P.2d 1221 (1976); *see Seattle v. P.B. Inv. Co.,* 11 Wn. App. 653, 662, 524 P.2d 419 (1974). The Attorney General and his assistants are empowered to legally commit the State in judicial proceedings. *State ex rel. Eastvold v. Superior Court,* 48 Wn.2d 417, 424, 294 P.2d 418 (1956). The State is bound to the legal commitments of the Attorney General with regard to the 1906 judgment and 1908 quiet title action, and the plaintiffs' first contention is without merit.

■ The plaintiffs next claim the Attorney General committed no act inconsistent with their present claim that the 1906 judgment is void. The State's oversight will not work

an estoppel; nonetheless, reliance on the State's commitments will constitute an "inconsistent act". *Pioneer Nat'l Title Ins. Co.*, 39 Wn. App. at 761–62. *See Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n*, 77 Wn.2d 812, 818, 467 P.2d 312 (1970); *Department of Rev. v. Martin Air Conditioning & Fuel Co.*, 35 Wn. App. at 682–87. The State will be estopped by its silence, coupled with knowledge of another's detrimental acts in reliance on that silence. Thus, the State's advice that a noncollection taxation hearing is pending coupled with 10 years of subsequent inaction estops the State from later collecting taxes; the taxpayer justifiably assumed that the State's silence implicated a noncollection ruling in *Conversions & Surveys, Inc. v. Department of Rev.*, 11 Wn. App. 127, 135, 521 P.2d 1203 (1974). Failure to inform a mother that she would be liable for expenses if she placed her children in foster care, when an administrative regulation required DSHS to so inform that mother, was grounds for estoppel in *West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 580, 586 P.2d 516 (1978). The Attorney General's advice to delay filing a claim against the State estopped the State from attempting to bar the plaintiff's action for failure to file a timely claim in *Shafer v. State,* 83 Wn.2d 618, 624, 521 P.2d 736 (1974). *See also Harbor Air Serv., Inc. v. Board of Tax Appeals,* 88 Wn.2d 359, 367, 560 P.2d 1145 (1977) (State estopped because it created a predictable misunderstanding by its ambiguous communication).

Silence coupled with knowledge of an adverse claim will estop a party from later asserting an inconsistent claim. *Huff v. Northern Pac. Ry.,* 38 Wn.2d 103, 228 P.2d 121 (1951).

> Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice.
>
> Such an estoppel may arise under certain circum-

stances from silence or inaction as well as from words or actions.

(Citations omitted.) *Huff*, at 114–15.

Where a party knows what is occurring and would be expected to speak, if he wished to protect his interest, his acquiescence manifests his tacit consent.

(Citations omitted.) *Bunn v. Walch*, 54 Wn.2d 457, 463, 342 P.2d 211 (1959). In *Bunn* we held that silence and cooperation with sale of property estopped the mortgagee of the property from challenging that sale and distribution of proceeds. *See also* 28 Am. Jur. 2d *Estoppel and Waiver* § 53 (silence, when there is knowledge of the facts and when honesty and fair dealing demand that the party asserting a right speak, is an "inconsistent act" for purposes of estoppel).

The inconsistent act element of equitable estoppel is satisfied here. First, the stipulations entered into pursuant to the State's 1908 quiet title action constitute acts inconsistent with the State's present claim that the 1906 condemnation judgment is void. The plaintiffs argue that those stipulations do not estop them because they merely represent an agreement to not dispute the validity of the 1906 condemnation judgment in the 1908 quiet title proceeding. We refuse to characterize the 1908 stipulations in such an unrealistically narrow manner. If in 1908 the enforceability of the 1906 judgment were questioned, the State would have specifically claimed Fourth Avenue by including the land condemned by the City in 1906 in its quiet title action. Instead the State affirmed the 1906 judgment by stipulating that it would stand irrespective of the State's quiet title action to land encompassing Fourth Avenue. Indeed, the State brought the 1908 action precisely because the City and other parties asserted claims of title to the Metropolitan Tract. The second stipulation, quieting title to land *except* a small strip and that portion of Fourth Avenue condemned by the City in 1906, buttresses our conclusion. These stipulations would have been unnecessary but for the State's acquiescence and affirmation of the City's

easement over Fourth Avenue by virtue of the 1906 condemnation judgment. We refuse to render the State's actions in entering into the 1908 stipulations futile and null; we therefore hold that by entering into the 1908 stipulations the State affirmed the valid force of the 1906 default judgment.

In addition, the State's 75–year vigil of silence supports our conclusion that the State has acted inconsistently with its present claim. The State failed to challenge the original 1906 condemnation award while, with knowledge that the City depended upon the validity of that award, the City improved, graded, and regulated Fourth Avenue without challenge from the State. Nonetheless, the plaintiffs argue that this case is analogous to *Pioneer Nat'l Title Ins. Co. v. State,* 39 Wn. App. 758, 695 P.2d 996 (1985) because the State's failure to challenge the 1906 judgment was merely an "oversight" that will not work an estoppel. The plaintiffs' affirmative acts and occupancy of the Metropolitan Tract bely, however, any assertion that they were ignorant of their own stipulations and blind to the City's control over the development of Fourth Avenue for more than 75 years. The State's decision to allow the 1906 default judgment to stand clearly evinces knowledge of an acquiescence in the City's easement over Fourth Avenue, inconsistent with the plaintiffs' current claim that the 1906 judgment is void.

The second and third elements of estoppel, reliance and injury, are also satisfied in this case. The City relied upon the State's relinquishment of ownership over Fourth Avenue for over 75 years; the City arranged to improve, grade, pave, and generally regulate and maintain Fourth Avenue, in some part without benefit of assessment from the State's lessees. The City converted the street to a main public thoroughfare and cultivated it into property with a monetary value of $15 to $17 million dollars. Moreover, the record reveals that the parties have speculated on highly valued development rights that Fourth Avenue may afford. Although plaintiffs assert they do not presently intend to

close or block Fourth Avenue, the City would undoubtedly suffer injury through loss of the ultimate control, monetary value, and benefit of development rights afforded by this main thoroughfare.

Thus, equitable estoppel bars the plaintiffs from challenging the 1906 condemnation judgment and claiming title to Fourth Avenue, and the City may regulate that street by valid ordinances.

### III

The plaintiffs attack the validity of City ordinance 111554 which requires them to tear down the Fourth Avenue skybridge and repair any damage caused by its removal. The plaintiffs assert that the ordinance is administrative rather than legislative in nature, and was enacted as the result of arbitrary and capricious action. The trial judge stated that the City's decision not to renew the skybridge permit "was a discretionary decision of the City which is not subject to judicial review except for fraud or abuse of power."

Whether ordinance 111554 is quasi judicial or legislative in nature, we are unable to review it absent a record of the City's proceedings. *Buttnick v. Seattle,* 105 Wn.2d 857, 860, 719 P.2d 93 (1986); *Abbenhaus v. Yakima,* 89 Wn.2d 855, 859-60, 576 P.2d 888 (1978); *Sargeant v. Department of Labor & Indus.,* 46 Wn. App. 30, 32, 728 P.2d 1095 (1986). *See also Issaquah v. Teleprompter Corp.,* 93 Wn.2d 567, 577, 611 P.2d 741 (1980) (court will not review appropriateness of the conditions in a franchise granting a privilege to use the city streets if those conditions do not conflict with constitutional or statutory provision); *Baxter–Wyckoff Co. v. Seattle,* 67 Wn.2d 555, 562, 408 P.2d 1012 (1965) (issuance of permits to use street for abutting landowner's private use "is a matter entirely within the discretion of the city council. . . . The courts have never taken it upon themselves to review the appropriateness of imposing conditions on such a privilege nor to substitute their judgment for that of the municipal auth-

orities.").

The plaintiffs at no point answer the City's assertions that we are unable to review ordinance 111554 absent a record, and failed to bring a record of the City Council proceedings to the attention of this court. Thus, ordinance 111554 remains valid and enforceable because we cannot determine whether the City passed the skybridge ordinances as the result of arbitrary and capricious action.

## IV

The trial judge refused to order the plaintiffs to pay permit fees for April 1981–1985 pursuant to ordinance 99871, as amended by ordinance 111554, until appeal was completed. The City contends the trial court abused its discretion by not requiring payment of fees as a condition of staying enforcement of the injunction ordering plaintiffs to tear down the skybridge and repair the abutting property.

■■ "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979); *see Lloyd v. Superior Court*, 42 Wn.2d 908, 909, 259 P.2d 369 (1953). A party subject to a mandatory injunction is generally entitled to a stay thereof, as a matter of right. *State ex rel. Langlie v. Wright*, 35 Wn.2d 703, 707, 215 P.2d 407 (1950). Although a stay is properly requested of the appellate court, the trial court also has authority to stay an order pending appeal. *Wright*, at 709; *see also Johnson v. Pate*, 54 Wn.2d 148, 150, 338 P.2d 131 (1959) (prohibitory injunction).

The injunction at bench is mandatory because it requires the plaintiffs to act rather than refrain from acting; the injunction requires the plaintiffs to take affirmative steps to comply with the City ordinance. Thus the trial court did not abuse its discretion when it stayed enforcement of the permit fee provision until issues pertaining to the validity of the ordinance were resolved on appeal.

## V

We hold that equitable estoppel bars the State from

attempting to void the 1906 condemnation judgment and claim unencumbered title to Fourth Avenue, and the City has an easement for street purposes over that portion of Fourth Avenue which traverses the Metropolitan Tract. We must affirm the trial court's decision that ordinance 111554 is valid and enforceable absent a record of the Seattle City Council's proceedings. Finally, the trial court properly stayed enforcement of permit fees until appeal was completed. The decision of the trial court is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.