

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KINDERACE LLC, a Washington limited liability company, | ) ) ) | No. 73409-1-I |
| Appellant, | ) ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF SAMMAMISH, a Washington municipal corporation, | ) ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 5, 2016 |

SPEARMAN, J. — By means of a boundary line adjustment, Kinderace LLC

(Kinderace) created a new 32,850 square foot parcel of which all but 83 square feet had

been designated by the City of Sammamish (City) as environmentally critical areas and

buffers. The City denied Kinderace's request for a reasonable use exception that would

have allowed it to proceed with a proposed development project on the new parcel.

Kinderace brought a regulatory takings claim against the City, alleging that the denial

deprived it of all economically viable use of the parcel. The trial court dismissed

Kinderace's claim, finding that it had received reasonable beneficial use of the property

as part of a joint development with an adjoining parcel. Kinderace appeals.[1] Finding no

error, we affirm.

---

[1] Kinderace also assigned error to the trial court's dismissal of its Land Use Petition Act (LUPA) claim, but because it makes no argument in support of that claim, we conclude its appeal of that issue has been abandoned. Allen v. Asbestos Corp., Ltd.,138 Wn. App. 564, 582, n.5, 157 P.3d 406 (2007) (citing Bercier v. Kiga, 127 Wn. App. 809, 824, 103 P.3d 232 (2004) (where no argument is presented in appellant's opening or reply brief, we consider the assignment of error abandoned.)

FACTS

This dispute concerns a parcel of land located in Sammamish, Washington, near the east side of 228th Avenue NE. In 1995, four owners of adjacent parcels -- Parcel 9032, Parcel 9058, Parcel 9053, and Parcel 9039, sought a rezone of their properties for commercial development. The rezone was granted and the owners worked with developers Elliot Severson and Ed and Mark Roberts (who later became Lynn LLC and SR Development, LLC), to prepare and submit plans for joint development.

In 2001, Lynn LLC submitted permit applications for Phase 1 of a "Plateau Professional Center," which would consist of a Starbucks and a medical office building on Parcel 9039. Clerk's Papers (CP) at 75. The permit was issued on November 12, 2002. In August and September of 2003, SR Development applied for a permit for the joint development of Parcel 9058 and 9032 as part of Phase 2. A Kentucky Fried Chicken/Taco Bell restaurant and a Kindercare daycare facility were to be built on Parcel 9058. Parcel 9032 was intended for use as a storm water detention pond.

SR Development also applied for a variance from the strict application of the 150-foot wetland buffer requirement, insisting that the site could not be developed without it. After much discussion, the City approved the development permit and variance for the three parcels on July 9, 2004. The detention pond to be located north of the creek on Parcel 9032 was critical to allowing Parcel 9058 to be developed as extensively as proposed in Phase 2.

The Plateau Professional Center was completed in July 2005. The diagram below represents the division and character of the area consisting of Parcels 9032 and 9058 at that time.



CP at 1142.

On December 20, 2005, the Sammamish City Council adopted an ordinance regarding environmentally critical areas that increased the buffer requirements for bogs and streams. At that time, Parcel 9032 was bifurcated by George Davis Creek, which had been newly designated as a stream of significance subject to a 150-foot buffer requirement. The ordinance also resulted in the south portion of Parcel 9032 being designated as a buffer area and not subject to development without buffer modification or a reasonable use exception (RUE). SMC 21A.50.070(2)(a)(i). The diagram below shows the newly designated buffer area south of George Davis Creek on Parcel 9032.

3



CP at 1143.

In 2006, Parcel 9058 was sold for $3,815,000. The record shows that development and the substantial sale price were made possible by the ability to locate the storm water detention pond on Parcel 9032.[2] Severson met with City officials in August 2006 to discuss developing the remainder of Parcel 9032 as a parking lot. CP 622-624. During that meeting, the City expressed that the parcel did not satisfy the criteria for a RUE because it was already being used as a storm water detention facility.

---

[2] Mr. Severson testified as follows before the hearing examiner:

> And ultimately we made a deal to really save our investment in 9058, because we'd had so much money sunk into 9058 that the only way we could make that work was if we could get two uses on 9058. And the only way we could do that is if the detention pond was not located on 9058 but was elsewhere. And the elsewhere was north of the creek on 9032.

CP at 1448.

4

The Plateau Professional Center would be considered a reasonable use for all of the parcels involved in the joint development, including Parcels 9032 and 9058. Id.

In 2007 and 2008, SR Development applied for two boundary line adjustments that modified the boundaries of Parcel 9032, placing the detention pond onto Parcel 9058. By design, new Parcel 9032 was completely constrained by stream, wetlands, and buffers. The boundary line adjustments were approved and the notices contained an "Approval Note" which stated that "This Request Qualifies for Exemption under SMC 19.20.010. It Does Not Guarantee the Lots Will be Suitable for Development Now or in the Future." CP at 530-532; 542-544.

On January 21, 2009, the line adjustments were recorded, along with a warranty deed transferring a portion of old Parcel 9032 to the owner of Parcel 9058. CP 534-537. The results of the two boundary line adjustments can be seen in the diagram below. New Parcel 9032 no longer contains the storm water detention pond but only extends as far as the stream setback line to the north.



CP at 1144.

5

SR Development appealed the assessed value of new Parcel 9032 and the value was reduced from $198,600 to $50,000. SR Development conveyed new Parcel 9032 to Kinderace LLC, on September 12, 2012. Kinderace consists of one member, Camtiney, LLC, whose members include Severson and his family.

Kinderace applied for a RUE in 2013 and initially sought approval for an ACE Hardware store, but chose to scale back and propose a Pagliacci Pizza restaurant. Kinderace contended that it had been denied all reasonable use of new Parcel 9032 as it was presently situated.

The City denied the RUE application, finding that new Parcel 9032 "ha[d] already been extensively developed with multiple commercial reasonable uses" by SR Development "a corporate alter ego" of Kinderace. CP at 71. As a result, the application of the ordinances did not deny all reasonable use of the property. Id. Kinderace appealed the City's decision to the hearing examiner. The appeal was denied, with the hearing examiner finding that

> [a] more than reasonable use had been obtained when Parcels 9058 and 9032 were jointly developed. The question now is whether the new parcel Severson created (by shrinking the size of Parcel 9032, after a reasonable use had been obtained and after more restrictive sensitive area regulations had been adopted, such that it no longer contains the portion of the lot which was actively used in the 2003-2004 development) is itself eligible for a reasonable use exception. It is not.

CP at 1793-1794.

Kinderace brought a LUPA action in superior court challenging the hearing examiner's decision and also filed a separate complaint, alleging that new Parcel 9032 had been subjected to a regulatory taking. The two actions were consolidated.

6

The trial court dismissed Kinderace's LUPA action, finding that it had failed to meet its statutory burden to establish satisfaction of the criteria for relief. The parties disputed whether the dismissal of the LUPA claim dispensed with Kinderace's regulatory takings claim. The City filed for a motion summary judgment and Kinderace filed a motion for partial summary judgment. The trial court granted the City's motion and denied Kinderace's cross-motion, finding that Kinderace had achieved reasonable beneficial use of Parcel 9032, in both the old and new configurations, as part of the joint development with Parcel 9058. Kinderace appeals.

## DISCUSSION

We review an order granting summary judgment de novo. Briggs v. Nova Servs., 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c).

The United States Constitution, U.S. Const. amend. 5, provides in relevant part, "nor shall private property be taken for public use, without just compensation." Similarly, Washington Const. art. 1, § 16, provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made ...." In Washington, a land use regulation which too drastically curtails an owner's use of his or her own property can cause a constitutional "'taking.'" Presbytery of Seattle v. King Cty, 114 Wn.2d 320, 329, 787 P.2d 907 (1990). In a regulatory takings claim, one threshold issue is whether a city's decision denies a landowner a fundamental attribute of property ownership, such as the right to possess, exclude others, dispose of, or make

some economically viable use of the property. <u>Kahuna Land Co. v. Spokane Cty.</u>, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999). The landowner has the burden of showing that the mere enactment of a regulation constitutes a taking. <u>Guimont v. Clarke</u>, 121 Wn.2d 586, 601-02, 854 P.2d 1 (1993).

Kinderace contends the trial court erred when it granted the City's summary judgment motion and denied its motion for partial summary judgment. It argues that the undisputed evidence shows that the City's environmental regulations deprived it of all economically viable use of new Parcel 9032. Kinderace claims the trial court erred when it concluded that Kinderace had achieved reasonable beneficial use of the new parcel as part of its joint economic development of the old parcel. According to Kinderace, the error arises from the trial court's failure to treat new Parcel 9032 as a new legal lot that "carries all the fundamental attributes of property ownership." Br. of Appellant at 12.

Kinderace argues that under RCW 58.17.040(6), the City's approval of the boundary line adjustment, which created new Parcel 9032, established its right to develop the lot irrespective of any prior development associated with old Parcel 9032. Kinderace's argument turns on its interpretation of RCW 58.17.040(6). That statute provides:

> A division made for the purpose of alteration by adjusting boundary lines, between platted or unplatted lots or both, which does not create any additional lot, tract, parcel, site, or division nor create any lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site;

Under its reading of the statute, Kinderace argues the City's approval of the boundary line adjustment accomplished two things. First, it created new Parcel 9032 as "a new legal lot that carries with it the right to some economically viable use." Br. of Appellant at

13. And second, it "necessarily determined that the proposed new Parcel 9032 would qualify as a building site." Appellant Reply Br. at 10-11. As a result, according to Kinderace, it now has a right to develop new Parcel 9032, separate and distinct from any benefit derived from the prior joint development associated with old Parcel 9032 and the City is bound by its determination that the new parcel is a "building site." Appellant Reply Br. at 12.

In support of the first proposition, Kinderace relies primarily on City of Seattle v. Crispin, 149 Wn.2d 896, 71 P.3d 208 (2003). But the case is inapposite because it does not discuss the issue of development rights associated with a new parcel created by a boundary line adjustment. The issue there was simply "whether the division of land that created [a new] tax lot ... qualified as a boundary line adjustment for purposes of the exemption from the subdivision statutes as set forth in RCW 58.17.040(6)." Crispin, 149 Wn.2d at 902. The court held that as long as a boundary line adjustment did not create an additional lot, it was within the statutory exemption. Id. at 904. The opinion does not address the proposition Kinderace asserts here. Accordingly, we reject the argument because it is not supported by relevant authority.

Furthermore, the undisputed facts do not support Kinderace's claim that the City's environmental regulations deprived it of all economically viable use. As the trial court noted, Kinderace does not appear to dispute that at the time the City adopted the relevant environmental regulations, old Parcel 9032 had already been fully developed as part of the Plateau Professional Center. Indeed, the record shows that but for the use of that parcel for the storm drainage pond, the profitable development of the center would not have been possible. Nonetheless, Kinderace seems to argue that, having

redrawn the boundaries of old Parcel 9032 to exclude the drainage pond and to encompass a specific area that is almost completely encumbered by significant environmental regulations, it is entitled to either a RUE or to be compensated again. We disagree.

In determining whether Kinderace had derived an economic use of new Parcel 9032, the trial court properly considered the configuration of the parcel at the time the regulations were enacted. To hold otherwise would enable a property owner to subvert the environmental regulations by changing parcel boundaries to consolidate critical areas. Once an owner had delineated a parcel that was entirely constrained, he or she could claim deprivation of all economically viable use. Here, SR Development instituted the boundary line adjustment, specifically carving out the parts of old Parcel 9032 to contain only the environmentally critical areas, and conveyed the property to Severson's new entity, Kinderace. The area of new Parcel 9032 had already been developed as part of the joint development of Plateau Professional Center. We reject the argument that Kinderace can use a boundary line adjustment to isolate the portion of its already-developed property that is entirely constrained by critical areas and buffers, and then claim that the regulations have deprived that portion of all economically viable use.

Next, Kinderace argues that the City's approval of the boundary line adjustment established that new Parcel 9032 was a "building site" and therefore approved it for potential development. Under RCW 58.17.040(6), a boundary line adjustment cannot "create any additional lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site." Because the statute does not define the term "building site," the applicable definition is

10

established by local ordinance, here, SMC 19A.04.060.[3] Under that ordinance, "building site" is defined as an area of land either (1) "[c]apable of being developed under current federal, state, and local statutes, including zoning and use provisions, dimensional standards, minimum lot width, shoreline master program provisions, critical area provisions and health and safety provisions;" or (2) "[c]urrently legally developed."

Kinderace relies on Mason v. King County, 134 Wn. App. 806, 808-809, 142 P.3d 637 (2006), which held that "RCW 58.17.040(6) does not permit a local jurisdiction to approve a boundary line adjustment application that would transform a legally created lot into a substandard, undersized lot." But Kinderace does not argue that new Parcel 9032 is either substandard or undersized. Instead, relying solely on the first definition of "building site" listed in SMC 19A.04.060, Kinderace argues that in approving the boundary line adjustment, the City "necessarily" determined that new Parcel 9032 was a lot capable of being developed. Appellant Reply Br. at 10.

The argument is not well taken. First, as the City points out, even if it had determined that the proposed new Parcel 9032 was not developable without an exception for reasonable use, it still could not have denied Kinderace's boundary line adjustment application when it met all of the requirements. Cox v. City of Lynnwood, 72 Wn. App. 1, 7-8, 863 P.2d 578 (1993) (city may not look beyond whether the individual application complies with its ordinance to justify denial of the boundary line adjustment). The application satisfied RCW 58.17.040(6) because it did not create any additional lots. And it qualified as a building site under SMC 19A.04.060(2) because at the time of

---

[3] "[L]ocal governments are free to define the dimensions of a 'building site' so long as that definition is consistent with applicable local zoning requirements." Mason v. King Cty., 134 Wn. App. at 811.

the boundary line adjustment, it was an area of land "[c]urrently legally developed" as part of the Plateau Professional Center. SMC 19A.04.060(2). Under these circumstances, the argument that the approval was a determination that the site is developable is untenable. This is especially so in light of the express statement in the notice of approval that "[i]t Does Not Guarantee the Lots Will be Suitable for Development Now or in the Future."[4] CP 530-32; 542-44.

We conclude that the trial court did not err when it granted the City's motion for summary judgment and denied Kinderace's motion for partial summary judgment.

The City asks for fees under RCW 4.84.370. The statute provides that:

(1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and

(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

---

[4] Similarly, Kinderace's argument that it expended significant resources on developing proposed uses for new Parcel 9032 in reliance on the finality of the City's approval of the boundary line adjustment is unavailing. Appellant's Reply Br. at 13-14. At issue in this case is whether approval of the boundary line adjustment was also a determination that the lot was developable. The finality of the boundary line adjustment is not in dispute.

12

Here, the statute does not apply because there is no appeal of a decision to issue, condition, or deny any development permit or similar land use approval or decision. Kinderace appealed only the trial court's dismissal of its regulatory takings claim; it did not appeal the dismissal of its LUPA claims. We therefore decline to award fees under RCW 4.84.370.[5]

Affirmed.

WE CONCUR:

_____ Spearman, J.

_____ Leach, J.

_____ Cox, J.

---

[5] Because we affirm the trial court's dismissal of Kinderace's claim, we also deny its request for fees under RCW 8.25.075.