# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| CHURCH OF THE DIVINE EARTH, | No.  49854-5-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, | PUBLISHED IN PART OPINION |
| Respondent. | |

SUTTON, J. — The Church of the Divine Earth (Church) appeals a judgment in favor of the City of Tacoma (City) on the Church's claim for damages under RCW 64.40.020[1] and its claim for violation of the Public Records Act (PRA).[2]  The Church argues that some of the trial court's findings of fact are not supported by substantial evidence.  The Church also argues that the trial court erred by concluding that the City's permit decision was not arbitrary or capricious and that the City did not know or should not have known that the court would ultimately determine that the building permit requirement it imposed was unlawful.  The Church further argues that the trial court erred by concluding that the City's search was adequate to comply with the PRA.  In addition, the Church claims that the trial court erred by denying its motion to amend its complaint; by

---

[1] RCW 64.40.020(1) creates a cause of action for damages resulting from agency actions on permit applications that are arbitrary, capricious, or unlawful, or that exceed lawful authority if the agency knew or reasonably should have known the action was unlawful or exceeded lawful authority.

[2] Ch. 42.56 RCW.

granting the City's motion in limine; and concluding, after an in camera review, that the City properly exempted documents under the attorney-client privilege and the work product doctrine.

In the published portion of this opinion, we address the Church's arguments regarding its RCW 64.40.020 damages claim. We hold that the trial court did not err in granting the City's motion in limine, the trial court's findings of fact are supported by substantial evidence, and the trial court did not err in concluding that the City was not liable under RCW 64.40.020. In the unpublished portion of this opinion, we address the Church's remaining arguments. We affirm.

FACTS

On September 20, 2013, the Church, through its pastor Terry Kuehn, submitted a permit to build a parsonage on a piece of property that the Church had recently purchased. As part of the initial building permit process, the City's planning employees conducted a review panel meeting to review the permit application. After the City's employees reviewed the permit application, it imposed several conditions on the building permit, including a 30 foot right-of-way dedication. Shortly after the Church's permit application was first reviewed by the City's employees, Kuehn told City Senior Planner Shanta Frantz that the property would be used for church services. Frantz informed Kuehn that a conditional use permit would be required to use the property for church services. In October, Kuehn met with City employees and clarified that the property would not be used for church services but would be solely used as a parsonage. Kuehn also requested a waiver of all permitting conditions attached to the building permit for the parsonage.

Kuehn asserted that the conditions of the building permit violated the Church's religious liberties. Because Kuehn continued to assert that the development of the property was exempt from conditions due to the property's religious status, there was continued confusion over whether

the property would be developed as a single family home (a parsonage) or as a church used for religious services.

In January 2014, the City held another review panel meeting to review the building permit conditions. After this meeting, Jennifer Kammerzell, a senior engineer in the City Public Works division, recommended that the right-of-way dedication be reduced from 30 feet to 8 feet. City Engineer Curtis Kingslover adopted Kammerzell's recommendation that the dedication be reduced to 8 feet.

The Church continued to contest the conditions placed on the building permit. As a result, the directors of the three relevant City divisions (Public Works, Planning and Development Services, and Environmental Services) met to discuss the Church's permit application and whether the permit conditions satisfied constitutional nexus and proportionality requirements under a *Nollan/Dolan*[3] analysis. After this meeting, the three division directors decided to remove all conditions except for the eight foot right-of-way dedication. Peter Huffman, Director of Planning and Development Services, wrote a letter to Kuehn documenting the directors' decision and

---

[3] "The 'nexus' and 'rough proportionality' tests are also called the '*Nollan/Dolan*' tests, after the United States Supreme Court's decisions in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994)." *City of Federal Way v. Town & Country Real Estate, LLC*, 161 Wn. App. 17, 44, 252 P.3d 382 (2011). The nexus test "requires an 'essential nexus' between the negative impacts that a private property use generates and the conditions or prohibitions imposed to restrict that use of private property." *Town & Country Real Estate*, 161 Wn. App. at 44 (quoting *Nollan*, 483 U.S. at 837). And the rough proportionality test requires some sort of individualized determination that the dedication of private property "'is related both in nature and extent to the impact of the proposed development.'" *Town & Country Real Estate*, 161 Wn. App. at 44 (quoting *Dolan*, 512 U.S. at 391).

designating the letter as a decision that could be appealed to the hearing examiner. The Church appealed to the hearing examiner.

The hearing examiner determined that the Church was challenging the dedication on constitutional grounds. Because the hearing examiner concluded that it did not have jurisdiction to decide constitutional issues, the hearing examiner granted the City's motion for summary judgment. The Church then filed a Land Use Petition Act (LUPA)[4] appeal with the superior court. At the LUPA appeal, the superior court concluded that the right-of-way dedication failed to satisfy the *Nollan/Dolan* nexus and proportionality requirements.

In October 2014, the Church submitted a PRA request to the City. The City provided approximately 3,500 pages of responsive documents. The City also provided approximately 200 pages of redacted documents and a privilege log that designated the documents as protected under the attorney-client privilege and the work product doctrine. The City closed the Church's PRA request in January 2015. Later, the City learned that two responsive documents—a video recording of the property and two pages of notes from Frantz—had not been provided to the Church. When the City learned that the documents had mistakenly not been disclosed, it immediately provided the documents to the Church.

## I. COMPLAINT AND AMENDMENTS

When the Church filed its LUPA petition, it also filed a claim for damages against the City under RCW 64.40.020. The Church later amended its complaint to add a claim for violations of

---

[4] Ch. 36.70C RCW.

4

the PRA. The parties agreed to bifurcate the LUPA petition and the Church's claim for damages

under RCW. 64.40.020 and his claims under the PRA.

After the Church's LUPA petition was resolved, the Church moved to amend its complaint

to include a claim for civil rights violations under 42 U.S.C. § 1983 and an additional damages

claim based on offsite improvements, such as sidewalks and curbs, that the City had imposed after

the first review panel meeting. The trial court denied the motion to amend the complaint, ruling:

> Well, I think on the takings on the first one, that it's a futile amendment. I don't
> think it's well taken, and so, yes, I would intend to deny it on its merits. The same
> on the 64.40 because my recollection of the record is that that wasn't part of it. And
> in—that, meaning the sidewalks and the curbs at the time and in the posture that
> the case came to me.

Clerk's Papers (CP) at 1092-93.

## II. IN CAMERA REVIEW OF REDACTED DOCUMENTS

In response to the Church's records request, the City submitted a privilege log identifying

several documents that were redacted. The City asserted that the redacted documents were exempt

under the attorney-client privilege and the work product doctrine. The trial court conducted an in

camera review of approximately 200 pages of documents.

> The documents can be summarized into the following groups:
>
> *Group 1*: Group 1 documents contain several email chains between the deputy city
> attorney, members of the review panel, and division directors discussing the
> appropriate way to address the Church's asserted legal arguments against the City's
> building permit conditions and the appropriate way to respond to the Church's
> waiver request. These documents were exempted as attorney-client privilege.
>
> *Group 2*: Group 2 documents contain requests from the deputy city attorney for
> additional information about the dedication and cost of offsite improvements in
> order to prepare for arguments on the Church's appeal of the permit decision. These
> documents were exempted as attorney-client privilege.

*Group 3*: Group 3 documents contain emails between the deputy city attorney and members of the review panel addressing questions regarding responding to the Church's records request. These documents were exempted as attorney-client privilege.

*Group 4*: Group 4 documents contain emails from the deputy city attorney regarding draft pleadings and declarations with the drafts attached to the emails. These documents were exempted as work product.

Sealed Exhibit. After an in camera review, the trial court entered an order finding that all the documents were properly exempted under either the attorney-client privilege or the work product doctrine and sealed the documents.

### III. MOTION IN LIMINE

Before trial, the City filed a motion in limine to exclude evidence that the right-of-way dedication requirement was for 30 feet rather than 8 feet. The City argued that the Church was prohibited from relitigating whether the dedication was 30 feet or 8 feet because the LUPA court had already found that the dedication was 8 feet. To support its motion, the City included the LUPA court's order, which struck out the reference to the 30 foot dedication and replaced it with "8 foot dedication." CP at 1709-10.

The trial court granted the City's motion in limine to exclude evidence offered for the purpose of disputing that the right-of-way condition at issue was eight feet. The trial court ruled that the LUPA court had already found that the right-of-way dedication was eight feet and res judicata applied. The matter proceeded to a bench trial.

IV. TRIAL TESTIMONY

A. DAMAGES CLAIM—RCW 64.40.020

Craig Kuntz is the Senior Planning Examiner for the City. Kuntz acted as the coordinator of the review panels for the Church's building permit. A review panel "is a group of subject matter experts that place conditions on new developments." VII Verbatim Report of Proceedings (VRP) at 806. Kuntz testified that at the review planning meetings, the panel considers the municipal code "along with nexus and proportionality." VII VRP at 810. On January 15, 2014, Kuntz placed the Church's permit application on another review panel to discuss the Church's waiver requests.

At the time of the Church's permit application, David Johnson was the City's Building Official and the Division Manager for Planning and Development Services. As the building official, Johnson was responsible for ensuring building permits were consistent with the development codes. Johnson discussed the Church's permit application process with Kuntz and reviewed the offsite conditions and the right-of-way dedication requirement for nexus and proportionality. Johnson determined there was a nexus between the building project and the permit requirements. Johnson wanted additional analysis regarding the proportionality of the requirements, and Kuntz provided him the review panel's recommendations for modification of the conditions. Johnson reviewed the modification, which removed all conditions except for the eight foot right-of-way dedication requirement, and he determined that the dedication requirement was proportional.

Director Huffman also testified at trial. Huffman testified that he was familiar with the nexus and proportionality analysis required by *Nollan/Dolan* and that the analysis is also contained in the Tacoma Municipal Code. Huffman testified that he discussed the Church's permit

application, including the possible offsite improvements, such as sidewalks and curbs, with Johnson, Kammerzell, and the city attorney. At the meeting, Huffman reviewed the review panel's recommendations for the modification of the original permit conditions and reviewed the nexus and proportionality.

B. PRA CLAIM

Lisa Anderson is responsible for processing the City's public disclosure requests. Anderson explained that when she first receives a PRA records request, she reviews the request and determines which departments are most likely to have responsive records. Anderson then explained that there are 16 departments in the City and each department has a public records coordinator. In addition, departments with several divisions have sub-coordinators for the different divisions. The coordinators are responsible for collecting the responsive records and sending them to Anderson. Anderson is then responsible for reviewing all the documents and for determining whether any exemptions or redactions are necessary.

Anderson provides a checklist to each public records coordinator to fill out before closing a records request. The checklist includes reminders to search for records in both hard copy and electronic formats, as well as file folders, emails, and project folders. Anderson testified that the coordinators from Planning and Development Services and Public Works submitted completed and comprehensive checklists documenting their record searches in this case.

Anderson also testified that when she originally received the Church's records request, the Church had incorrectly spelled Divine Earth. However, Anderson advised all the Departments to check both the spelling on the request and the correct spelling. Anderson produced approximately 3,500 pages of responsive records to the Church's records request.

At the time of the Church's records request, Heather Croston was tasked with coordinating the public records response from Planning and Development Services. Croston testified that Planning and Development Services had at least five or six drives that had to be searched for responsive records. Each of the drives contained different information and were separate from the operating system, which also had to be searched. Croston testified that she searched for documents using the Church's name, address, and permit number.

Croston testified about the two responsive records, the video and the notes, that were not produced in the City's original disclosure to the Church's records request. Croston testified that the video was not produced because it was not stored under the Church's name, address, or permit number. Croston testified that Frantz's notes were not produced because Croston "assumed that when [she] ran a report out of our operating system that they would automatically print on the report" with all of the accompanying documents. VIII VRP at 1006. Croston made this assumption because all other types of files on the operating system would print on the report.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

After trial, the trial court made the following disputed findings of fact:

5. At the Review Panel meetings, City staff conducted a *Nollan/Dolan* analysis, considering the impact that the construction of the parsonage would have on the existing infrastructure and determined that the dedication requirement was made necessary, in part, to address the impacts created by the new structure. For example, the Church was building a parsonage on a vacant lot, which would create an increase in both vehicular and pedestrian traffic.
. . . .
16. On March 7, 2014, Craig Kuntz on behalf of the City provided [his] response to the Church's waiver request. The City denied the Church's request that all development conditions be dropped but it did modify the right of way dedication.
17. The Kuntz letter, the City's response to the waiver request, included a memorandum from Jennifer Kammerzell, which indicated that after consideration of the applicant's proposed and existing improvements, the City was reducing its

9

required conditions and that the right of way dedication requirement along East B Street would be reduced from 30 [feet] to [8] feet. . . .

. . . .

29. In locating and providing records responsive to the Church's request, the City searched in all places reasonably likely to contain responsive materials. There was detailed testimony at trial about how each department and sub-department at the City processed the Church's request for records as well as the about [sic] the various methods for gathering and storing information.

30. Each department and sub-department (division) has an assigned public records coordinator that works with the members of his or her department or sub-department in searching for and collecting all responsive records. Each department and sub-department keeps its records in various formats including hard copy and electronically, in a manner that is specific to that department or sub-department. Both hard copies and electronic documents were searched. The electronic documents are maintained on various hard drives, servers, and databases, all of which were searched for responsive records.

31. The City searched using appropriate search terms such as address, applicant name, permit application number, and parcel number.

. . . .

33. The City conducted a complete and detailed search that was broad enough in scope to identify all responsive documents and materials even though two items were missed and were not included in the City's initial production: 1) a video approximately two minutes in length showing the Church's lot that was filmed on January 13, 2014 by an intern, Ben Wells; and 2) portions of computer notes created by Senior Planner Shanta Frantz in the fall of 2013.

34. The Public Records Coordinator from Planning and Development Services that was handling this request believed that Ms. Frantz's computer notes had printed out along with other computer records, but the notes had not printed.

CP at 2401-07.

The trial court concluded that the City's action in imposing the right-of-way dedication was not arbitrary or capricious or made without lawful authority and that the City did not know and should not have known that the dedication was unlawful. The trial court also concluded that the City's search for responsive records was adequate and, as a result, that the City did not violate the PRA.

The trial court entered judgment in favor of the City on both the Church's claim for damages under RCW 64.40.020 and its claim for violations of the PRA. The Church appeals.

ANALYSIS

The Church challenges the trial court's judgment on its damages claim under RCW 64.40.020, arguing that the trial court erred in granting the City's motion in limine, the trial court's findings of fact are not supported by substantial evidence, and the trial court erred in concluding that the City was not liable for damages. We disagree.

I. DAMAGES CLAIM—RCW 64.40.020

A. MOTION IN LIMINE

The Church argues that the trial court abused its discretion by granting the City's motion in limine to exclude evidence that the right-of-way dedication was 30 feet rather than 8 feet, as determined by the superior court in the LUPA appeal. We review the trial court's ruling on motions in limine for an abuse of discretion. *Colley v. PeaceHealth*, 177 Wn. App. 717, 723, 312 P.3d 989 (2013). The trial court abuses its discretion when its decision is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010). Even if the trial court abuses its discretion in granting a motion in limine, the appellant must demonstrate prejudice for this court to reverse. *Colley*, 177 Wn. App. at 723.

Here, the Church argued that it was entitled to damages under RCW 64.40.020 in part because the City's imposition of a 30 foot right-of-way dedication violated the statute. The City filed a motion in limine to exclude conflicting evidence regarding the dedication because the superior court had determined that the City imposed an eight foot dedication in the earlier LUPA

appeal. The trial court granted the City's motion in limine because res judicata barred the Church from relitigating a fact that had already been found in the LUPA case.

Although the trial court asserted that it was relying on res judicata, the applicable doctrine in this case is the related doctrine of collateral estoppel. Res judicata prevents a party from asserting the same claim or cause of action. *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983). In contrast, collateral estoppel prevents a second litigation of an issue between the parties, even when a different cause of action is asserted. *Rains*, 100 Wn.2d at 665. Here, res judicata does not apply because the Church was asserting a claim for damages under RCW 64.40.020, which is a different cause of action than the LUPA appeal.

However, we may affirm the trial court's judgment on any grounds established by the pleadings and supported by the record, even if the trial court did not consider them. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). The application of collateral estoppel is an issue that we review de novo. *Schibel v. Eymann*, 189 Wn.2d 93, 98, 399 P.3d 1129 (2017). Here, the record is sufficient to allow this court to perform a de novo review of whether collateral estoppel properly supported the trial court's decision to grant the City's motion in limine.

Collateral estoppel bars relitigation of an issue in a later proceeding involving the same parties. *Schibel*, 189 Wn.2d at 99.

> For collateral estoppel to apply, the party seeking it must show (1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice.

*Schibel*, 189 Wn.2d at 99.

Here, the issue in the earlier proceeding was identical to the issue in the later proceeding because both proceedings included the issue of whether the right-of-way dedication giving rise to the Church's cause of action for damages was 8 feet or 30 feet. The LUPA judgment was a final judgment on the merits. And both the City and the Church were parties in the LUPA case and are parties in the current appeal. Therefore, the only collateral estoppel factor at issue is whether applying collateral estoppel would be an injustice to the Church.

The Church argues that applying collateral estoppel would be an injustice because it did not have a full and fair opportunity to litigate the issue regarding the size of the right-of-way dedication. But, the Church had the opportunity to litigate the issue at the LUPA appeal and chose not to do so. When the LUPA court indicated that there may be some confusion about whether the dedication was 8 feet or 30 feet, the Church responded,

> Well, it's my understanding that there was an effort to roll it back to 8 feet, but then they were overruled by another department in the City to make it 30 feet. But for the purpose of this hearing, it doesn't matter.

CP at 1295. The Church could have argued whether the dedication was 8 feet or 30 feet, but specifically chose not to do so in the LUPA action. Therefore, there would not be an injustice in barring the Church from relitigating a finding of fact that the superior court explicitly made in the prior LUPA action.

Because all 4 elements of collateral estoppel are satisfied, the Church was barred from relitigating the issue of whether the right-of-way dedication was 8 feet or 30 feet. Therefore, we affirm the trial court's order granting the City's motion in limine on collateral estoppel grounds.

B. CHALLENGED FINDINGS OF FACT

We review challenged findings of fact for substantial evidence. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is evidence sufficient to persuade a fair-minded person that the premise is true. *Sunnyside Valley*, 149 Wn.2d at 879. We review de novo whether the trial court's findings of fact support the trial court's challenged conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341-42, 308 P.3d 791 (2013). We consider unchallenged findings of fact as verities on appeal. *Kittitas County v. Kittitas County Conservation Coal.*, 176 Wn. App. 38, 54, 308 P.3d 745 (2013).

> The Church assigns error to the following findings of fact:
>
> 5. At the Review Panel meetings, City staff conducted a *Nollan/Dolan* analysis, considering the impact that the construction of the parsonage would have on the existing infrastructure and determined that the dedication requirement was made necessary, in part, to address the impacts created by the new structure. For example, the Church was building a parsonage on a vacant lot, which would create an increase in both vehicular and pedestrian traffic.
> . . . .
> 16. On March 7, 2014, Craig Kuntz, on behalf of the City provided [his] response to the Church's waiver request. The City denied the Church's request that all development conditions be dropped but it did modify the right of way dedication.

CP at 2401-03.[5]

---

[5] The Church also assigns error to finding of fact 17. However, the Church does not provide argument or authority on whether this finding of fact was supported by substantial evidence. We will not consider assignments of error unsupported by argument or authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we decline to consider the Church's assignment of error to finding of fact 17 and consider it a verity on appeal.

As an initial matter, the Church asserts that finding of fact 5 is properly considered a legal conclusion rather than a finding of fact. We disagree.

There is a difference between whether a *Nollan/Dolan* analysis occurred and whether or not the City's *Nollan/Dolan* analysis justified the permit conditions imposed by the City. The former is a fact, and the latter is a legal conclusion. Accordingly, finding of fact 5 is properly reviewed as a finding of fact for substantial evidence.

Finding of fact 5 is supported by substantial evidence. "The 'nexus' and 'rough proportionality' tests are also called the '*Nollan/Dolan*' tests, after the United States Supreme Court's decisions in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994)." *City of Federal Way v. Town & Country Real Estate, LLC*, 161 Wn. App. 17, 44, 252 P.3d 382 (2011). At trial, several City employees who participated in the review panel meetings testified that nexus and proportionality were the primary considerations in discussing and deciding the requirements for building permits. And the employees testified that their discussions regarding nexus and proportionality occurred in the review panel meetings regarding the Church's permit application. Because nexus and proportionality are the requirements under the *Nollan/Dolan* test, discussions regarding nexus and proportionality are the equivalent of conducting a *Nollan/Dolan* analysis. Moreover, because the trial testimony establishes that the City employees discussed nexus and proportionality at the review panel meetings, substantial evidence supports the trial court's finding that "City staff conducted a *Nollan/Dolan* analysis." CP at 2401.

The remainder of finding of fact 5 is also supported by substantial evidence. The Church argues that the lot was not a vacant lot because a single family home had previously been built on

15

the property. But witnesses testified that the house that had previously been built on the lot had been demolished and that the lot was considered a vacant lot. Accordingly, substantial evidence supports the remainder of the trial court's finding of fact 5 that the lot was vacant.

The Church also argues that finding of fact 16 is unsupported by substantial evidence because the letter from Kuntz could not modify anything. But Kuntz testified that, at the time of the letter, the City had changed the right-of-way dedication from 30 feet to 8 feet. Accordingly, at that point, the condition was modified. Therefore, the trial court's finding of fact 16 is supported by substantial evidence.

C. LIABILITY UNDER RCW 64.40.020

The Church assigns error to all of the trial court's conclusions of law regarding the City's liability under RCW 64.40.020. RCW 64.40.020(1) states,

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority . . . . PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

Therefore, there are three grounds for imposing liability under RCW 64.40.020: (1) the action was arbitrary or capricious, (2) the City knew or should have known that the act exceeded its lawful authority, or (3) the City knew or should have known that its act was unlawful. The trial court concluded that the Church did not establish any of the three grounds required under RCW 64.40.020.

1. Arbitrary or Capricious

16

An agency action is arbitrary or capricious if it "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 589, 90 P.3d 659 (2004) (internal quotation marks omitted) (quoting *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 26, 65 P.3d 319 (2003)). "Where there is room for two opinions, and the agency acted honestly and upon due consideration, this court should not find that an action was arbitrary and capricious, even though this court may have reached the opposite conclusion." *Port of Seattle*, 151 Wn.2d at 589.

Here, the trial court did not err by concluding that the City's decision to impose a right-of-way dedication on the Church's building permit was not arbitrary and capricious. The City's decision was not willful and it did not act unreasonably because the trial court found that the City's employees had conducted a *Nollan/Dolan* analysis. And the decision was made with regard to the attending facts or circumstances because the trial court found that the review panel considered "the impacts created by the proposed development, including to the pedestrian traffic, vehicular traffic, parking, sidewalks, and driveway access." CP at 2401. Even though the LUPA court ultimately disagreed with the City's decision, the trial court's findings of fact support its conclusion that the decision was not arbitrary or capricious.

The Church also argues that the LUPA court's finding that the condition was unconstitutional renders the City's action per se arbitrary. However, in the cases on which the Church relies, the courts held that the agency actions at issue were unconstitutional because they were arbitrary or capricious; the agency actions were not arbitrary and capricious because they were unconstitutional. *See, e.g., Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 962,

17

954 P.2d 250 (1998). Therefore, the Church's arguments do not show that the trial court erred in concluding that the City's action was not arbitrary or capricious.

2. Exceeding Lawful Authority

The Church does not argue that the City does not have the authority to impose conditions in building permits, and it does not argue that the City does not have the authority to require right-of-way dedications as a requirement in building permits. Rather, the Church argues that the "City has no 'lawful authority' to violate its own code, state statute and the U.S. Constitution." Br. of Appellant at 37. However, an unlawful act is not the same as an agency action performed without lawful authority.

An agency action performed without lawful authority is also known as an ultra vires act. *See Ferlin v. Chuckanut Cmty. Forest Park Dist.*, 1 Wn. App. 2d 102, 108, 404 P.3d 90 (2017). "'Ultra vires acts are those performed with no legal authority and are characterized as void on the basis that no power to act existed, even where proper procedural requirements are followed.'" *Ferlin*, 1 Wn. App. 2d at 108 (quoting *S. Tacoma Way, LLC v. State*, 169 Wn.2d 118, 123, 233 P.3d 871 (2010)). Even when an agency act violates the agency's statutory directive, it is not considered an ultra vires act if the act is within the agency's realm of power. *Bd. of Regents v. City of Seattle*, 108 Wn.2d 545, 552, 741 P.2d 11 (1987).

Here, the City acted within its realm of power to impose conditions on building permits. Simply because the LUPA court later found that the City's action was unlawful, the City's imposition of conditions on the Church's building permit was not an ultra vires act. Therefore, the trial court properly concluded that the City did not act without lawful authority for the purposes of liability under RCW 64.40.020.

3. Unlawful Act

Finally, the Church argues that the trial court erred in concluding that the City did not know or should not have known that imposing the right-of-way dedication requirement on the building permit was unlawful. We disagree.

It is undisputed that the right-of-way dedication requirement was ultimately determined to be an unlawful condition on the Church's building permit. The relevant question is whether the City knew or should have known that the right-of-way dedication requirement was unlawful at the time the City imposed it. To that end, the trial court made the following conclusions of law:

> 4. The City reasonably believed that the development conditions it attached to the permit had a nexus to the project and were proportional to the Church's project.
> 5. The City of Tacoma did not know and should not have reasonably known that its requirement for a dedication of right of way would be considered violative of *Nollan/Dolan* by the superior court.

CP at 2408.

Here, the Church's argument is essentially that because the trial court ultimately determined that the City's right-of-way dedication requirement was unlawful, the City knew or should have known that it was unlawful at the time it imposed the requirement. And the Church argues that the City should have known that the condition was unlawful because the Church objected to the condition. Neither of these arguments have merit.

The Church primarily relies on the LUPA court's decision to argue that the City knew or should have known that its decision was unlawful. However, LUPA explicitly prohibits this analysis. RCW 36.70C.130(2) states that "[a] grant of relief by itself may not be deemed to establish liability for monetary damages or compensation." Therefore, the Church must show something more than simply that the City's decision was ultimately reversed under LUPA.

Here, the trial court found that the City's employees performed reviews before imposing the requirements to the Church's building permit. The trial court further found that the City's employees had performed a *Nollan/Dolan* analysis in their review of the permit application and, after considering the impact of the Church's proposed development, determined that the dedication requirement was necessary. These facts support the trial court's conclusion that the City reasonably believed that the development conditions had a nexus to the project and were proportional. In other words, the City reasonably believed that the dedication satisfied the requirements of *Nollan/Dolan*. Because the City reasonably believed that it satisfied the requirements of *Nollan/Dolan*, it did not know and should not have known that its action was unlawful at the time it took the action. Accordingly, the trial court did not err in its conclusions of law 4 and 5.

This conclusion is confirmed by the terms of chapter 64.40 RCW itself. As noted, RCW 64.40.020(1) provides:

> [an] action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

The evidence does not support that City officials in fact knew that their actions were unlawful when taken and, as already shown, the City's actions were within its authority. One could, as the Church invites, hold that the City should have known its actions were unlawful because they were ultimately reversed. That, however, would transform chapter 64.40 RCW into an insurance system in which local governments would indemnify applicants for losses from any action later deemed

20

unlawful. Nothing in the statute's terms or its purpose as inferred from those terms suggests that was the legislature's intent.

Finally, the fact that the Church objected to the dedication does not show that the City knew or should have known that the right-of-way dedication violated the *Nollan/Dolan* requirements. The trial court found that after the Church objected to the requirements attached to the building permit, the City reviewed and modified the conditions. Simply showing that the Church and the City disagreed about what satisfied the *Nollan/Dolan* requirements is insufficient to show that the City knew or should have known that the superior court would ultimately conclude that the condition violated the *Nollan/Dolan* analysis. Accordingly, the trial court did not err in concluding that the City did not know and should not have known that the dedication requirement would later be found to violate *Nollan/Dolan* and, therefore, was unlawful.

We hold that the trial court did not err in granting the City's motion in limine, the trial court's findings of fact are supported by substantial evidence, and the trial court did not err in concluding that the City was not liable under RCW 64.40.020.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

The Church argues that the trial court erred in denying its motion to amend its complaint to include a civil rights claim and to include damages for additional offsite improvements that were originally imposed by the City. The Church also challenges the trial court's judgment on its PRA claim, arguing that the trial court erred in concluding that the City properly redacted documents, the trial court's findings of fact are not supported by substantial evidence, and the trial court erred

by concluding that the City performed an adequate search and, thus, did not violate the PRA. We affirm.

## II. MOTION TO AMEND

The Church argues that the trial court erred by denying its motion to amend its complaint to add a claim for a violation of civil rights under 42 U.S.C. § 1983 and to add a claim that the City was liable for damages for imposing a condition that the Church install sidewalks because amendments should be freely given. The City argues that the trial court did not abuse its discretion by denying the motion to amend because the amendment to add a § 1983 claim would have been futile and the claim for damages for the sidewalk condition was no longer at issue. We agree with the City.

We review a trial court's denial of a motion to amend a complaint for an abuse of discretion. *Nakata v. Blue Bird, Inc.*, 146 Wn. App. 267, 278, 191 P.3d 900 (2008). CR 15(a) allows a plaintiff to amend a complaint by leave of the court. Leave of the court should be "freely given when justice so requires." CR 15(a). A trial court appropriately denies a motion to amend a complaint when the amended claim is futile. *Nakata*, 146 Wn. App. at 278.

### A. 42 U.S.C. § 1983 CLAIM

The Church filed a motion to amend its complaint to add a 42 U.S.C. § 1983 claim based on its claim that the LUPA court found that the City's action constituted an unconstitutional taking. The trial court denied the motion to amend, concluding that amending the complaint to add a § 1983 claim would be futile. Because there was no unconstitutional taking that would support a § 1983 claim, the trial court did not abuse its discretion by denying the Church's motion to amend its complaint to add a § 1983 claim.

42 U.S.C. § 1983 provides that a person who deprives a citizen of any constitutional right under the color of any statute, ordinance, regulation, custom, or usage is liable to the injured party. Here, the trial court characterized the Church's § 1983 claim as a takings claim, and the Church did not dispute this characterization. The trial court very clearly ruled that there was not a regulatory taking by the City in this case. "In a regulatory takings claim, one threshold issue is whether a city's decision denies a landowner a fundamental attribute of property ownership, such as the right to possess, exclude others, dispose of, or make some economically viable use of the property." *Kinderace LLC v. City of Sammamish*, 194 Wn. App. 835, 843, 379 P.3d 135 (2016).

The trial court concluded that there was no regulatory taking of the Church's property because the right-of-way was never actually imposed or enforced against the Church. Therefore, the Church would not be able to meet its burden to show that there was a regulatory taking that would support a § 1983 claim. Because the Church could not meet its burden to show a regulatory taking and it provided no other argument supporting its motion to amend its complaint to add a § 1983 claim, the trial court did not abuse its discretion by denying the motion to amend the complaint to add a § 1983 claim.[6]

B. DAMAGES FOR SIDEWALKS

The Church also argues that the trial court erred by denying the Church's proposed amendment to add a claim for damages as a result of "offsite improvements such as sidewalks and

---

[6] On appeal, the Church seems to argue that the § 1983 claim was actually based on the fact that the exaction violated *Nollan*. However, the Church has offered no authority that a permit condition that ultimately fails the *Nolan* nexus analysis supports a § 1983 claim. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

curbs." CP at 501. However, the trial court denied the amendment because the requirement that the Church install sidewalks and curbs had already been removed by the time the hearing examiner and the LUPA court considered the Church's permit appeal. The Church argues that the trial court erred because the final decision was the letter from Director Huffman and the letter included the sidewalk conditions. The City argues that the final decision was the decision of the hearing examiner. The trial court did not abuse its discretion by concluding that the final decision was the hearing examiner's decision, and therefore, the trial court did not abuse its discretion by denying the Church's motion to amend to add a claim for offsite improvements.

For the purposes of a claim under RCW 64.40.020, an act giving rise to liability for damages is a "final decision by an agency." RCW 64.40.010(6). Chapter 64.40 RCW does not define "final decision." However, for the purposes of LUPA, a building permit does not become a final decision until the administrative review process created by the permitting authority concludes. *Durland v. San Juan County*, 182 Wn.2d 55, 64-65, 340 P.3d 191 (2014). Under Tacoma Municipal Code (TMC) 1.23.050, the hearing examiner has jurisdiction over appeals from the decision of the Director of Planning and Development Services. Because the TMC provides for an administrative appeals process, the City's permit decision was not final until that administrative appeals process concluded. Accordingly, the hearing examiner's decision was the final decision by the City that is actionable under RCW 64.40.020.

Here, the hearing examiner's decision did not include offsite improvements, such as sidewalks and curbs, because the City had dropped those conditions from the building permit before the hearing examiner made a decision. The final decision of the agency included only the right-of-way dedication requirement for the building permit. Therefore, only the right-of-way

dedication requirement was actionable under RCW 64.40.020. Because only the right-of-way dedication requirement was actionable under RCW 64.40.020, an amendment to add a claim for offsite improvements would have been futile. Thus, the trial court did not abuse its discretion by denying the Church's motion to amend its complaint to add a claim for damages under RCW 64.40.020.

### III. PRA CLAIM

In addition to its claim for damages under RCW 64.40.020, the Church also brought a claim based on asserted violations of the PRA.[7] First, the Church argues that the trial court erred by concluding, after an in camera review, that the City properly exempted documents under the attorney-client privilege and the work product doctrine. After an independent review of the documents, we conclude that the trial court did not err.

Second, the Church argues that the trial court erred in entering judgment in favor of the City on its PRA claim because the trial court's findings of fact regarding the scope of the City's search were not supported by substantial evidence. And the Church asserts that the trial court erred in its conclusions of law because the City silently withheld a video and notes that were responsive to the Church's PRA request. The trial court's findings of fact regarding the scope of the City's search are supported by substantial evidence. And the trial court properly concluded that the City's search was adequate. Therefore, the City did not violate the PRA.

---

[7] The Church did not designate the trial court's order following the in camera review in its notice of appeal. RAP 5.3(a) requires that the notice of appeal "designate the decision or part of decision which the party wants reviewed." Although the Church failed to properly designate the trial court's order following the in camera review, the order is part of the record on appeal, and we exercise our discretion under RAP 1.2 to review it.

A. IN CAMERA REVIEW

"The PRA is a strongly worded mandate for broad disclosure of public records." *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 714, 261 P.3d 119 (2011). Agencies are required to disclose any public record on request unless it falls within a specific enumerated exemption. RCW 42.56.070(1). The agency bears the burden to demonstrate that a record falls within an exemption. *Neighborhood Alliance*, 172 Wn.2d at 715.

Under the PRA, records are exempt from disclosure if they would not be available to other parties to a controversy under the civil rules for discovery. RCW 42.56.290. Under CR 26(b)(4), the "mental impressions, conclusions, opinions, or legal theories of an attorney . . . of a party concerning . . . litigation" are not discoverable and, therefore, are exempt under the PRA. "[A]ny communication made by the client to [his or her attorney], or [the attorney's] advice given thereon in the course of professional employment" is also protected from disclosure under the PRA. RCW 5.60.060(2)(a).

We performed an independent in camera review of the documents. The Group 1 documents fall within the scope of the protected attorney-client privilege because they are communications from the City to their attorney and contain the attorney's advice on addressing the Church's challenges to the City's permit conditions. The Group 2 documents were also properly exempted under the attorney-client privilege because they are communications between the attorney and the City employees in preparation for the hearing before the hearing examiner regarding the Church's appeal of the building permit requirements. And the Group 3 documents were properly exempted under the attorney-client privilege because they were communications between the City employees and the City attorney seeking advice on replying to the Church's PRA request. Finally, the Group

4 documents were properly exempted as work product because they contained drafts of documents that the City attorney was preparing for the hearing in front of the hearing examiner.

Because all of the documents were properly exempted or redacted under the attorney-client privilege or the work product doctrine, the trial court did not err in its order following the in camera review.

B. CHALLENGED FINDINGS OF FACT

As noted above, we review challenged findings of fact for substantial evidence. *Sunnyside Valley*, 149 Wn.2d at 879. The Church challenges the following findings of fact regarding its PRA claim:

> 29. In locating and providing records responsive to the Church's request, the City searched in all places reasonably likely to contain responsive materials. There was detailed testimony at trial about how each department and sub-department at the City processed the Church's request for records as well as the about [sic] the various methods for gathering and storing information.
> 30. Each department and sub-department (division) has an assigned public records coordinator that works with members of his or her department or sub-department in searching for and collecting all responsive records. Each department and sub-department keeps its records in various formats including hard copy and electronically, in a manner that is specific to that department or sub-department. Both hard copies and electronic documents were searched. The electronic documents are maintained on various hard drives, servers, and databases, all of which were searched for responsive records.
> 31. The City searched using the appropriate search terms such as address, applicant name, permit application number, and parcel number.
> . . . .
> 33. The City conducted a complete and detailed search that was broad enough in scope to identify all responsive documents and materials even though two items were missed and were not included in the City's initial production: 1) a video approximately two minutes in length showing the Church's lot that was filmed on January 13, 2014 by an intern, Ben Wells; and 2) portions of computer notes created by Senior Planner Shanta Frantz in the fall of 2013.
> 34. The Public Records Coordinator from Planning and Development Services that was handling this request believed that Ms. Frantz's computer notes had printed out along with other computer records, but the notes had not printed.

CP at 2406-07.

The Church argues that finding of fact 29 is not supported by substantial evidence because neither the video nor the notes were found and, therefore, the City could not have searched in all places reasonably likely to contain responsive documents because the City did not find these two specific documents. However, there is a difference between searching all places reasonably likely to contain responsive documents and actually finding every responsive document in those locations. The City employees responsible for responding to the Church's PRA request testified that they searched all the servers, hard drives, and files in the planning and land use divisions. They also asked all the employees who had handled the Church's permit application to search their servers and drives for potentially responsive documents. And they searched hard copies of files. These were all the places where responsive documents were likely to be found. Therefore, the trial court's finding of fact 29 was supported by substantial evidence.

The Church argues that finding of fact 30 is not supported by substantial evidence because it "doesn't say they were thoroughly searched or that located notes were produced." Br. of Appellant at 54. However, the Church's argument does not demonstrate that the trial court's finding was unsupported by substantial evidence. At best, the Church's argument addresses why this specific finding of fact may not support the trial court's conclusion that the City's search was adequate. Because the City's employees testified that they searched both hard copy and electronic documents, the trial court's finding of fact 30 was supported by substantial evidence.

The Church argues that finding of fact 31 is not supported by substantial evidence because the search terms did not include any dates. The Church's argument has no relevance to whether

the trial court's finding is supported by substantial evidence because the trial court did not find that the City searched using dates as a search term. The coordinator for the PRA request at the planning department testified that the search terms used were address, applicant name, and permit application number. Therefore, the trial court's finding of fact 31 is supported by substantial evidence as to the search terms for address, applicant name, and permit application number.

The Church argues that finding of fact 33 is not supported by substantial evidence because "[i]f the search was indeed 'complete and detailed' of the [operating system] and the drive which held the videos they would have been located and produced." Br. of Appellant at 54. Again, the Church's argument is flawed because the trial court's finding of fact refers to the *search* not to the production of records. Here, it is undisputed that the production of records was incomplete because two specific documents were not provided to the Church in response to its records request. However, the search included all the drives and servers in the relevant divisions, and the search included requests to all relevant employees to search their records, servers, and emails. Although two specific records were not produced in the City's response to the Church's records request, there was no evidence that there were specific places that the City failed to search or that there were employees who were not asked for relevant records. Therefore, substantial evidence supports the trial court's finding 33 that the City's search was complete and detailed even if it resulted in the City failing to provide two specific documents that were responsive to the Church's records request after it had already produced approximately 3,500 pages of responsive documents.

The Church argues that finding of fact 34 is not supported by substantial evidence because the coordinator "assumed" the notes had been printed rather than believed the notes had been printed. Br. of Appellant at 54. It is unclear how the use of the word assumed demonstrates that

the trial court's finding was not supported by substantial evidence. Croston did testify that she assumed that Franz's computer notes had been printed at the same time that the report had been printed. But in this context, the Church fails to show how there is any substantive difference between Croston's use of the word assume and the trial court's use of the word believe. Therefore, the trial court's finding of fact 34 that Croston believed that the notes had been printed was supported by substantial evidence.

C.  ADEQUATE SEARCH

The adequacy of a search for public records is judged by a standard of reasonableness—the search must be reasonably calculated to uncover all responsive documents. *Neighborhood Alliance*, 172 Wn.2d at 720. "[T]he issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found." *Neighborhood Alliance*, 172 Wn.2d at 720. "[T]he focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." *Neighborhood Alliance*, 172 Wn.2d at 719-20.

"What will be considered reasonable will depend on the facts of each case." *Neighborhood Alliance*, 172 Wn.2d at 720. Agencies must perform more than a perfunctory search, follow obvious leads, and search more than one place if there are additional sources for requested information. *Neighborhood Alliance*, 172 Wn.2d at 720. "Th[at] is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neighborhood Alliance*, 172 Wn.2d at 720.

The Church argues that the City's search could not have been adequate because the City failed to find two specific documents. However, the Church's argument completely disregards all

the case law regarding adequate searches. *See, e.g., Neighborhood Alliance*, 172 Wn.2d at 720; *Kozol v. Wash. State Dept. of Corr.*, 192 Wn. App. 1, 8-9, 366 P.3d 933 (2015); *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012). And it relies on an incorrect legal standard. The law does not require a thorough search, but an adequate search. As explained above, our Supreme Court has made it clear that an agency's failure to locate or disclose specific documents is not a PRA violation if the agency made an adequate search for responsive records.

Considering the standards for determining whether an agency has performed an adequate search, the trial court's conclusions of law were supported by its findings of fact. The trial court properly concluded that the City performed more than a perfunctory search and included more than a single system because the trial court found that the City searched both hard copy and electronic documents, as well as various hard drives, servers, and databases. The trial court's findings also support the trial court's conclusion that the City searched in all places reasonably likely to contain responsive materials. And the trial court properly concluded that the search was adequate because the trial court found that the City used numerous relevant search terms and used both the misspelled names submitted in the Church's records request, as well as the correctly spelled names. Under the standard set by our Supreme Court, the City performed an adequate search in response to the Church's PRA request. Therefore, the trial court properly concluded that the City did not violate the PRA by failing to disclose the video and notes in its response to the Church's records request.

ATTORNEY FEES

Both parties request attorney fees under RCW 42.56.550 and RCW 64.40.020. RCW 42.56.550(4) states,

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

And RCW 64.40.020(2) provides that the prevailing party in an action under chapter 64.40 RCW may be entitled to reasonable costs and attorney fees. Because the Church does not prevail on its appeal on either the claim for damages under RCW 64.40.020 or its claim under the PRA, the Church should not be entitled to an award of attorney fees and costs on appeal.

Under the plain language of RCW 42.56.550, the City is the agency, and not a party prevailing against an agency in a PRA action. Therefore, the City is not entitled to attorney fees under the PRA. However, the City is the prevailing party on the RCW 64.40.020 claim. Therefore, we award the City its reasonable attorney fees for prevailing on the appeal for the RCW 64.40.020 claim.

We affirm.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.